BONNER et al. v. MEIKLE et al.

(Circuit Court, D. Nevada. September 20, 1897.)

No. 633.

1. MINING CLAIMS—APPLICATION FOR PATENT—RIGHT TO CONTEST.

Occupants of lots in a town located on public lands of the United States, who have built on and improved the same, have a possessory right, which entitles them to contest the issuance of a patent to the claimant of a mining location covering such lots, though neither they nor the authorities of the town have taken any steps to secure title to themselves.

2. SAME—CONTEST BETWEEN TOWN-SITE AND MINERAL CLAIMANTS.

To entitle an applicant to a patent for a mining claim, as against occupants who have improved lots situated within its limits, claiming under

the town-site act, it must be shown that at the time the town-site claimants acquired or, purchased the lots the land was known to contain mineral of such extent and value as to justify expenditures for the purpose of extracting it. This rule applies though the town-site claimants have taken no steps to obtain title.

B. Sanders and O. W. Powers, for complainants.
Henry Rives and Robt. M. Clarke, for defendants.

HAWLEY, District Judge (orally). This suit was brought in the state court by complainant Bonner on behalf of himself and for the benefit of numerous other persons upon a protest made by complainants to an application made by defendants for a patent to the Naid Queen mining location at De Lamar, Lincoln county, Nev., and upon the petition of one of the defendants was removed to this court upon the ground of prejudice and local influence. Bonner v. Meikle, 77 Fed. 485. Some question was made in the oral argument of counsel as to the character of this suit. It was instituted under and by virtue of and in compliance with the provisions of section 2326, Rev. St., which provide as follows:

"Where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim."

In such suits, as is said in Perego v. Dodge, 163 U. S. 160, 165, 16 Sup. Ct. 971, 973:

"The determination of the right of possession as between the parties is referred to a court of competent jurisdiction in aid of the land office, but the form of action is not provided for by the statute; and apparently an action at law or a suit in equity would lie, as either might be appropriate under the particular circumstances,—an action to recover possession when plaintiff is out of possession, and a suit to quiet title when he is in possession."

This suit comes within the latter class. The cause was tried before the court, a stipulation having been filed waiving a jury. The ground in controversy is situate upon the unsurveyed public lands of the United States. The complainants are the owners of, and in possession of, certain town lots, and the buildings erected thereon, in the town of De Lamar, situate within the surface limits of the location of the Naid Queen claim. They have expended over $30,000 in the construction of buildings and making improvements on their land. The notice of the mining location was posted on the ground prior to the entry of complainants upon the land. At the time the notice was posted, no discovery had been made of any mineral-bearing lode or vein within the limits of the location. Section 2320, Rev. St., provides that "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." The contention of complainants is that no such discovery has ever been made, but, in any event, that no such discovery was made until

long after the rights of complainants had been acquired. In Enterprise Min. Co. v. Rico-Aspen Min. Co., 167 U. S. 108, 112, 17 Sup. Ct. 762, 763, the court said:

"In order to make a location, there must be a discovery; at least that is, the general rule laid down in the statute. * * * The discovery in the tunnel is like a discovery on the surface. Until one is made, there is no right to locate a claim in respect to the vein, and the time to determine where and how it shall be located arises only upon the discovery, whether such discovery be made on the surface or in the tunnel."

This suit involves a question of fact. If a mineral lode or vein was discovered within the limits of the Naid Queen surface location, running in a parallel direction with the side lines of the location, prior to the entry of complainants upon the town lots, the defendants are entitled to a patent. Was such a discovery made prior to that time? A preliminary objection was urged by defendants' counsel to any consideration of the merits of this case upon the ground that complainants have no standing in court; that they have not established any right to the premises in controversy; and are not, therefore, entitled to protest against the application of defendants for a patent to the Naid Queen mining location, because there had been no action taken by the citizens of the town of De Lamar to obtain title from the United States to the town site. To quote from the argument of counsel: The testimony "does not show that the public authorities have ever made application for it. It does not show that any steps have been taken to comply with the laws of the United States on the part of the complainants, or to acquire by purchase or otherwise from the United States the title which is alleged to be outstanding in the government; nor is there anything in the case that shows that this complainant, or those whom he represents, have now or expect to obtain this title, or that they have taken any steps to connect themselves with the government of the United States." It is true that such steps might have been taken by the town authorities, if it has any town organization, or by complainants, to secure title from the government to the land occupied by them; but the fact that no such steps have been taken does not deprive the property owners of the town, or any or either of them, from protesting against the application of the defendants for a patent to the Naid Queen location, which includes the property which they claim to own. The citizens of a town have as much right to build houses upon the public domain in which to live as others have to locate mining claims upon which to work. One purpose is as necessary as the other. Both are entitled to the equal protection of the law. Although complainants have not connected themselves with any government title, nor sought in any manner to secure such title, yet they have such a possessory right to the land upon which their buildings have been erected as will prevent others, not having any title from the government, from entering thereon, and taking their property from them, without first establishing a superior right thereto.

There are many cases where the owners of mining ground valued at millions of dollars have preferred to hold the same under "a mere possessory right" rather than to take any steps to secure a patent

from the government. Forbes v. Gracey, 94 U. S. 762, 767. Would it not be absurd to claim that in such cases the owners of the possessory title, under valid mining locations, were not entitled to any protection, and could not even protest against the application of some subsequent locator for a patent covering a portion or all of their ground because they had never taken any steps to secure title to their property from the United States? The argument of counsel would have merit if the complainants were seeking to set aside a patent that had been issued by the United States to the owners of the Naid Queen location. Being simply occupants of and in possession of town lots on the public lands without title, they have no vested rights to this land as against the United States nor any purchaser from them. Sparks v. Pierce, 115 U. S. 408, 6 Sup. Ct. 102. But that is not this case. The defendants have no title from the United States. They are not in any better position in this respect than the complainants. It is true that they are seeking to procure the government title; but, in order to obtain a patent, they must first prove that they have a better right to the land than the complainants. The case must be considered upon its merits.

A mass of testimony has been introduced tending to show that the entire country in and around the town of De Lamar is one mineralized zone or belt about 5 miles long and 1½ miles wide, in which over 200 mining locations have been made; that the Naid Queen is within this mineralized zone; that it is entirely surrounded by other mining locations, in each of which more or less mineral has been found; that the general course of the fractures found in this belt, upon the sides of which the paying rock is usually found, is northeast and southwest. The formation of this zone or mineral belt of country is quartzite, and the pay ore or mineral rock is largely composed of, or is found in, this quartzite. It is difficult to tell by merely looking at the quartzite whether it contains mineral or not. There are specimens occasionally found where more or less quartz is plainly to be seen, clearly indicating that it contains gold in paying quantities; other specimens have copper stains and other marks peculiar to mineral-bearing rock; but the greater portion of the rock that is milled is of such a character that it is exceedingly difficult, if not impossible, even for experienced miners, thoroughly acquainted with this district, to tell the mineral-paying quartzite from the quartzite which does not contain sufficient mineral to pay for extracting and milling. It is necessary to have assays made in every section of the timbered ground in order to ascertain whether or not the quartzite therein contains mineral in sufficient quantities to justify its being sent to the mill for reduction. Owing to these peculiar characteristics, as well as of the exciting conditions found in all new mining camps upon the discovery of rich ore, it can readily be understood why all the ground in the mineral belt or region of country where the quartzite was found was located upon a claimed lode, whether any valuable mineral was found therein or not. The notice of location of the Naid Queen was posted on the ground April 14, 1892. At that time there were no houses or buildings of any kind upon the surface ground included within the limits of the Naid Queen location. The first cabin built within the town

site of De Lamar was constructed in the fall or winter of 1893. The first buildings erected upon the ground in controversy were put up in the spring of 1894. Quite a number of buildings were constructed that year; others in 1895. The town is built in a gulch. The following diagram shows the location of the ground as shown by the survey made by the United States mineral surveyor in the application made by the owners of the Naid Queen for a patent.

There was some work on the extreme northerly end of the Naid Queen location done in the fall of 1893,—a little cut 5 or 6 feet long and 2 feet deep on the croppings, and another small cut or prospect hole about the north end of the tunnel, found on the diagram. The cut at the croppings was enlarged in 1894. It was made a little deeper, and extended in length to about 16 or 18 feet, and in the deepest place was about 6 feet. The tunnel was started in April, 1895. The following assays of samples of rock found in the tunnel were made by the assayer of the De Lamar Company:

"Naid Queen Samples.

"No. 1. From door of tunnel E. 12 feet, sides and top; value, trace. No. 2. 2nd 12 feet E. of No. 1, sides and top; value, trace. No. 3. 1st 6 feet of 3rd 12 feet E. of No. 1, sides and top; value, trace. No. 4. 4th 12 feet east, sides and top; value, trace. No. 5. 5th 12 feet east, sides and top; value, trace. No. 6. 6th 12 feet east, sides and top; value, trace. No. 7. 7th 12 feet E., sides and top; value, trace. No. 8. 8th 12 feet E., sides and top; value, trace. No. 9, 9th 12 feet E., sides only; value, trace. No. 10. Distance from crosscut to face of tunnel (10'), sides, top, and face; value, trace. No. 11. About 40 feet east of door of tunnel on south side of tunnel; value, $.46. No. 12. About 70 feet east of No. 11 in a winze in south crosscut; value, $4.82. No. 13. South side of winze in south crosscut; value, $.68. No. 14. Face of north crosscut, about 50 feet north of No. 13; value, trace. No. 15. 13 feet south of No. 14, on west side north crosscut; value, $1.14. No. 16. 6 feet south of No. 15, west side of north crosscut; value, $0.70. No. 17. Intersection of west side of north crosscut and north side of main tunnel; value, trace. No. 18. Roof of tunnel at its intersection with crosscut; value, $4.22. Above samples were taken on or about March 7, 1897, and were made in duplicate, and checked.　　　　Oscar Lachmund,

"Assayer for De Lamar Nevada G. Mg. Co., De Lamar, Nevada."

From the testimony it appears that assays No. 12 and No. 18 were in fact taken over the easterly side line of the Naid Queen. It is admitted by the defendants that no ore or rock containing mineral was ever found at or near the point of "discovery" marked on the diagram. The testimony shows that nothing more than a trace was found in the tunnel for a distance of 108 feet from the mouth. The length of the tunnel is 130 feet. All the samples were taken at the northeast corner of the Naid Queen location. There is no testimony tending to show the discovery of any mineralized rock of any value in any other portion of the Naid Queen location. The points where the assays were taken showing a trace are over 1,000 feet distant from the buildings claimed by the complainants. The opinions and beliefs of witnesses that, as depth is attained, quartzite containing valuable mineral would or might be found extending through the location of the Naid Queen from the north to the south end, is entirely theoretical and problematical. At present, none has been found except at the places above stated. The fact that pay ore has been found in the middle or northern portion of the Lucky Bar, immediately adjoining the Naid Queen on the north, and in the southerly end of the Richmond location, adjoining the Naid Queen on the south, is too remote to establish the fact that there is a continuity of ore extending from the one point to the other through the Naid Queen location. So, with reference to the quartzite in the Gold Cup on the easterly side of the Naid Queen, while some valuable specimens of rock are found,

and some ore has been milled, still it is not shown that ore or rock of any value extends over and into the Naid Queen. At the northerly end of Jim Crow, which is situated adjoining and northwesterly from the Lynchburg, valuable rock containing mineral is found. To the west of Lucky Bar, in Jim Crow No. 1 and No. 2, paying ore is found; and to the north and northeast of the Lucky Bar, in Monitor No. 2 and April Fool, the quartzite is rich in mineral; and to the north of these last-named claims are the Millionaire, Monitor, Cliff, Swifter, and other valuable locations. From the testimony it appears that the richest locations are found in the hills surrounding the town; that, as you approach the base toward the gulch, the values cease; and in the gulch, where the town of De Lamar is shown on the diagram, no mineral has been found.

Taking into consideration all the facts and circumstances testified to by the respective witnesses, and carefully weighing the same, it seems clear to my mind that, whatever the probabilities or improbabilities of the continuance of mineral-bearing quartzite and rock in place through the Naid Queen lengthwise at the present time may be, there was not, at the time the complainants took up, purchased, or secured the town lots upon which their respective buildings are erected, any such discovery of mineral-bearing earth, rock, or ore within the limits of the Naid Queen location as would give to the owners of such location a prior right to the ground and premises occupied by the complainants herein. It must be borne in mind that this is not a contest between two mining companies, both claiming the ground as mineral land, and each claiming to be the first locator, or the first to discover rock in place bearing mineral. In all such cases the question as to what constitutes a discovery of a vein or lode under the provisions of section 2320, Rev. St., is governed by the rule announced in Book v. Mining Co., 58 Fed. 106, 121, that, when a locator of a mining claim finds rock in place containing mineral in sufficient quantity to justify him in expending his time and money in prospecting and developing the claim, he has made a discovery, within the meaning of the statute, whether the rock or earth is rich or poor, whether it assays high or low, with this qualification: that the definition of a lode must always have special reference to the formation and peculiar characteristics of the particular district in which the lode or vein is found. This rule has always prevailed in the courts, as is clearly shown in the numerous authorities there cited. See, also, McShane v. Kenkle (Mont.) 44 Pac. 979, 981. Why? Because it was never intended that the courts should weigh scales to determine the value of the mineral found as between a prior and subsequent locator of a mining claim on the same lode. But where the rights of claimants to a town site, or to agricultural land, or as between the locators of a placer claim and others claiming a vein or lode to the same ground, are involved, other questions must be considered. In all such cases there are different statutes to be construed, and a somewhat different rule prevails. This is clearly stated by the court of appeals of this circuit in Migeon v. Railway Co., 23 C. C. A. 156, 77 Fed. 249, 256. In a case of contest between mineral claimants on one side and parties holding town-site patents on the other the supreme court has repeatedly declared that under the acts of congress

which govern such cases, in order to except mines or mineral lands from the operation of a town-site patent, it is not sufficient that the lands do in fact contain minerals, or even valuable minerals, when the town-site patent takes effect, but they must at that time be known to contain mineral of such extent and value as to justify expenditures for the purpose of extracting them; and, if the lands are not known at that time to be so valuable for mining purposes, the fact that they have once been valuable, or are afterwards discovered to be still valuable, for such purposes, does not defeat or impair the title of persons claiming under the town-site patent. Deffeback v. Hawke, 115 U. S. 393, 404, 6 Sup. Ct. 95; Davis v. Weibbold, 139 U. S. 507, 525, 11 Sup. Ct. 628; Dower v. Richards, 151 U. S. 658, 663, 14 Sup. Ct. 452. In Davis v. Weibbold, the court, after announcing the rule as above stated, said:

"In connection with these views it is to be borne in mind, also, that the object of the town-site act was to afford relief to the inhabitants of cities and towns upon the public lands by giving title to the lands occupied by them, and thus induce them to erect suitable buildings for residence and business. Under such protection many towns have grown up on lands which, previously to the patent, were part of the public domain of the United States, with buildings of great value for residence, trade, and manufactures. It would, in many instances, be a great impediment to the progress of such towns if the titles to the lots occupied by their inhabitants were subject to be overthrown by a subsequent discovery of mineral deposits under their surface. If their title would not protect them against a discovery of mines in them, neither would it protect them against the invasion of their property for the purpose of exploring for mines. The temptation to such exploration would be according to the suspected extent of the minerals, and, being thus subject to indiscriminate invasion, the land would be, to one having the title, poor and valueless, just in proportion to the supposed richness and abundance of its products. We do not think that any such results were contemplated by the act of congress, or that any construction should be given to the provision in question which would lead to such results."

I am of opinion that those cases, and the principles therein announced, are applicable to this case. It is true that no steps have even been taken by the town-site claimants of De Lamar to obtain a town-site patent in order to procure a title from the government. They might have done so; and, if they had, then the mineral claimants to the Naid Queen mining location could have protested, and the identical question here raised would then have been presented. The fact as to which party first applies for a patent certainly cannot make any difference in the principle which is involved.

It was argued by counsel for complainants that, if any discovery of a lode or vein was made in the Naid Queen location, it was a vein that ran in an easterly and westerly direction at the northerly end of the location. It was also claimed that the application for a patent by the defendants was not made in good faith for the purpose of procuring a patent to mining ground for mining purposes, but was an attempt to obtain a patent for the sole purpose of getting title to the town lots and buildings in possession of the complainants. It is undoubtedly true that in a case like the present, where complainants acted in the utmost good faith in locating upon or purchasing the town lots upon which their improvements are made, under the belief that the land was not mineral, their rights ought not to be disturbed without clear and satisfactory proof that within the limits of the mining location there

had been found a lode or vein which, in its natural course and direction, would give the owners thereof a right to all the surface ground within the limits of the location. In other words, if the proofs were undisputed that a discovery of a lode or vein had been found at the northerly end of the Naid Queen location; that from such discovery it clearly appeared that the course of the lode lengthwise was easterly and westerly, and at right angles within the side lines of the Naid Queen,—then, in the eye of the law, the side lines of the location as made upon the ground would become the end lines of the location (King v. Mining Co., 152 U. S. 222, 228, 14 Sup. Ct. 510; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 687, 15 Sup. Ct. 733), and the owners of the claim would only be entitled to a patent for 300 feet of surface ground on each side of the middle of the lode; and hence it would not interfere with complainants' rights. There is more or less testimony that tends to support that theory, but the views already expressed are decisive of the case, and render it unnecessary to decide other questions raised by counsel. The defendants are not entitled to a patent for any part or portion of the land claimed and occupied by the complainants. The complainants are entitled to judgment for their costs. Let a decree be entered accordingly.