CLAIR BERTO AND JAMES WOOLEVER, APPELLANTS, *v.* WILLIAM WILSON, GLEN WOODS, ORVILLE CARLOCK, BOB FRANKS, AND CHARLES CAVANAUGH, RESPONDENTS.

No. 4013

April 25, 1958.          324 P.2d 843.

(Rehearing denied July 1, 1958.)

*George G. Holden,* of Battle Mountain, and *Cecil S. Haynie,* of Grand Junction, Colorado, for Appellants.

*William P. Beko,* of Tonopah, for Respondents.

## OPINION

By the Court, MERRILL, J.:

This is an action to quiet title to mining property. Mining claims located by the respective parties overlap and to that extent are in dispute. Judgment was entered by the trial court, sitting without jury, quieting title in

the respondents to the property claimed by them. From that judgment this appeal is taken. The sole question involved is whether the record supports the determination of the trial court that respondents were senior in the posting of their claims and in the discovery of mineral in place and thus were senior in location of the disputed area.

The problem is an old one in modern setting. The rush to a new strike and the scramble for the most desirable locations set the stage for a drama well-known to the west. Today the magic word is "uranium"; the scintillation counter and the mineral-light lamp have taken their places as prospectors' tools; the airplane and the 4-wheel-drive truck have reduced the factors of time and distance. The plot of the drama, however, remains essentially the same: the rush, the locations, the overlapping of claims, the discovery of values, the dispute. And in the orderly resolution of the dispute the principles of law remain substantially unchanged from the days of the mother lode and the Comstock.

Appellants' first contention is that the record fails to support the trial court's findings that respondents were first in the posting of their claims. There is no merit to this contention. The record amply supports the findings. Appellants are in the position of contending that the trial court chose to believe the wrong witnesses, a proposition which this court rejects. Carlson v. McCall, 70 Nev. 437, 271 P.2d 1002; Canepa v. Durham, 65 Nev. 428, 451, 198 P.2d 290, 202 P.2d 286.

The record presents a tale worth telling, however.

In October, 1955 the Atomic Energy Commission was engaged in a series of aerial explorations seeking by airborne scintillation counters to locate radio-active anomalies: areas in which scintillation indicates the presence of greater radio-activity than is normally found as natural background. Notice was given that an anomaly map would be posted on the morning of October 17, at the post-office bulletin board in Tonopah, Nevada. Uranium prospectors, thus alerted, were on hand ready for a race to the announced anomaly.

Respondents, while engaged in other mining activities, had observed the commission airplane in its explorations and judged that the anomaly would be located in southern Lander or northern Nye Counties. They gambled in support of their judgment and respondent Wilson was posted at Carver's Station in Smoky Valley, halfway between Tonopah and Austin, to await a telephone call from respondent Woods in Tonopah as soon as the map was posted. The call came at about 11 o'clock A.M. and Wilson was directed to a point a few miles south-east of Austin near the Blackbird ranch. He was off in a jeep at 75 miles an hour with a substantial lead over all competitors. He reached the anomaly area at about noon, first on the ground, and commenced his search for the anomaly by aid of scintillator. By 1:15 he was satisfied that he had found it. By 2 o'clock, when Woods arrived to join him, Wilson had posted two claims. The two men completed posting two additional claims, concluding at about 2:30. Location notices were immediately recorded at Austin.

Meanwhile, back at the Tonopah post office, appellants had prepared themselves with a plane stationed at the Tonopah airport and a rented pick-up truck. In their assault upon the anomaly it was to be Woolever by land and Berto by air. They ran into time-consuming difficulties, however. The truck broke down about half-way to Austin. The mishap was discovered by Berto who landed on the highway and took Woolever aboard with him. They returned to Tonopah to radio a request that arrangements be made for a truck to meet them at the Austin airport. En route back to Austin they detoured to fly over the anomaly area in an air reconnaissance. They observed several motor vehicles already there. By the time they had landed at Austin, had been driven to the anomaly area and had hiked in to the ground itself, several two-man parties were already at work posting claims. Several witnesses, including both respondents, testified to having seen the plane on its reconnaissance at about 2 o'clock. While appellants deny this and fix a much earlier time, we shall not question the manner in which the trial court apparently resolved this dispute.

We conclude that respondents have been properly established as senior in the posting of their claims.

Appellants next contend that the record discloses that respondents had not made any discovery of mineral in place on October 17 and that their locations for that reason cannot be recognized as of that date.

The right to location of a mining claim presupposes the discovery of a lode or vein, for that which is claimed is the lode which has been discovered. NRS 517.010. The location of a mining claim, therefore, cannot rest upon the conjectural or imaginary existence of a vein or lode. King v. Amy & Silversmith Consol. Min. Co., 152 U.S. 222, 14 S.Ct. 510, 38 L.Ed 419. In Cole v. Ralph, 252 U.S. 286, 40 S.Ct. 321, 326, 64 L.Ed. 567, involving conflicting mining claims in the State of Nevada, the court stated, "To sustain a lode location the discovery must be of a vein or lode of rock in place bearing valuable mineral. * * * In practice, discovery usually precedes location, and the statute treats it as the initial act. But, in the absence of an intervening right, it is no objection that the usual and statutory order is reversed. In such a case the location becomes effective from the date of discovery; but in the presence of an intervening right it must remain of no effect."

Appellants, having posted their claims on the 17th, returned to the property the following two days for further prospecting and location work and the staking of corners. Several shallow pits were dug and a deposit of radio-active mineral-bearing ore was uncovered. Samples were taken which proved to be autunite, a commercially valuable uranium-bearing ore.

Respondents, on the other hand, after posting their claims and recording location notices on the 17th, were required to return to Tonopah that same day due to the illness of respondent Woods. They did not return to their property for six days. On their return they came prepared for active mining. A shaft was dug at their original point of discovery and considerable additional work was done in the development of their discovery and in

the improvement of their claims. No question is raised as to the sufficiency of their development work or the survey of their claims or the location certificates ultimately filed. The question is as to the sufficiency of their original discovery on the 17th to give them a prior location over appellants.

Appellants read the record as demonstrating that respondents' original location was based solely upon the indications of radio-activity produced by their scintillator. They contend that this is no more than an indication of the possible presence of commercially valuable ore and that in the absence of the discovery of the source of the radiation it cannot be said to constitute a discovery of mineral in place; citing Rummell v. Bailey, 7 Utah 2d 137, 320 P.2d 653; Globe Min. Co. v. Anderson, Wyo., 318 P.2d 373. Appellants emphasize that scintillation may have many other causes than uranium-bearing ore, a fact which is not disputed. Berto testified that in the anomaly area there was no mineralized rock in place exposed without digging; that without pick-and-shovel prospecting a discovery of mineral in place could not have been made. Appellants concede that under these circumstances their own locations must date from their discovery the day following posting (the 18th). They contend, however, that this was five days before any discovery was made by respondents.

Testimony of both appellants and respondents may be said to be sketchy as to the details of discovery. It would appear that both sides were primarily concerned with an attempt to establish priority of posting and that the nature of their discoveries and the particulars thereof upon each individual claim were secondary considerations at the time of trial. A study of the record, however, convinces us that there is sufficient to support a determination that, at the time of posting, mineral in place had been discovered by respondents to the extent required by law.

In determining whether a sufficient discovery of mineral has been made, the courts make a distinction

between two classes of cases: (1) those (such as the one before us) where the dispute is between two locators upon the same lode as to which is the prior locator; (2) those where the issue is whether that which is claimed is a true lode of value and the land truly mineral in character.

In cases of the first type the court is not primarily concerned with the nature of the discovery or the extent of the mineral value which it has demonstrated. The question is as to which of two contestants is entitled to possession of that which each independently has found. Each is claiming possession of the same thing for the same values, whatever they may be. An examination of values, therefore, is of little if any consequence.

Accordingly, what may constitute a sufficient discovery in such a case may be wholly insufficient in cases involving issuance of patent or establishment of an apex; or where the ground is claimed as placer or under agricultural or townsite entry. Golden v. Murphy, 31 Nev. 395, 103 P. 394, 105 P. 99; Fox v. Myers, 29 Nev. 169, 86 P. 793; See V. 2, Lindley on Mines, sec. 336.

The test here is whether the discovery is such as to justify a reasonable miner in expending his time and money in prospecting and developing the claim. Fox v. Myers, supra. This court in that case quoted Shoshone Min. Co. v. Rutter, 9 Cir., 87 F. 801, to the following effect (29 Nev. at p. 184), "The purpose of the statute, in requiring that 'no location of a mining claim shall be made until the discovery of a vein or lode within the limits of the claim located,' was to prevent frauds upon the government by persons attempting to acquire patents to land not mineral in character. But as was said in Bonner v. Meikle (C. C.), 82 Fed. 697: 'It was never intended that the court should weigh scales to determine the value of mineral found, as between a prior and subsequent locator of a mining claim on the same lode.' "

In Nevada Pacific Development Corp. v. Gustin (9 C.C.A.), 226 F.2d 286, 287, dealing with a dispute between prior and subsequent locators of a tungsten lode

near Gabbs, Nevada, the court stated that in such a dispute "no more than a slight showing by a prior locator of discovery of a mineral-bearing vein or lode is needed to satisfy the legal requirements requisite to a valid location."

In the case at bar the conflicts are between appellants' Linda group of five claims on the one hand; and, on the other, respondents' Lowboy group of four claims and two of the Nura group located by others and conveyed to respondents.

The testimony of respondent Wilson and his witnesses is to the effect that at his first discovery monument on Lowboy a vein had been observed in surface outcropping, appearing to strike east and west and extending through Lowboy No. 1 in one direction and into the Nura group in the other. It was a solid formation protruding from the surface. On each of the Lowboy and Nura claims outcroppings similar to this vein gave indication of vein or lode material. Radio-activity was apparent on all claims and was highest at the original point of discovery. A sample was broken by Wilson from the vein outcropping at the original point of discovery and appeared to him to be autunite. His prospecting prior to location involved not only visual observation in the light of his prior mining experience, but use of a scintillator and mineral-light lamp. In the opinion of one witness, a man of many years experience in mining and prospecting, the appearance of the outcropping at the point of discovery was not only that of a lode but of the apex of the lode.

While foresight rather than hindsight is the gauge of the reasonable miner's expectations, in this case subsequent events lend weight to the proposition that Wilson's expectations were justified and reasonable. Development work clearly demonstrated that the discovery was genuine. The shaft was dug at the very point of discovery. Along one side it exposed a vein of autunite. Samples from seven different points throughout the claims demonstrated that what Wilson and his witnesses had

judged to be outcroppings of mineral-bearing ore or vein matter were such in fact.

We conclude that a sufficient discovery was made by respondents.

Affirmed.

BADT, C. J., and EATHER, J., concur.