**WESTERN STANDARD URANIUM COMPANY,** Successor in interest to the Defendants, Roy Peck, Leigh Roush, and Washakie Exploration Company, Defendants, Appellant,

v.

**Ralph H. THURSTON,** Appellee (Plaintiff below).

No. 2892.

Supreme Court of Wyoming.

Sept. 13, 1960.

G. Joseph Cardine, Casper, for appellant.

W. J. Nicholas, Smith, Nicholas & Clark, Lander, for appellee.

Before BLUME, C. J., and GUTHRIE and HARKINS, District Judges.

District Judge GUTHRIE delivered the opinion of the court.

This is an action by Ralph Thurston, plaintiff and appellee, to quiet title to thirteen lode mining claims known as XYZ, one through thirteen inclusive, located in the Gas Hills area of Fremont County, Wyoming, against various defendants. Before the trial thereof, however, defendant, Western Standard Uranium Company, appeared as the sole defendant by virtue of having succeeded to the entire interest therein.

In addition to asking the quieting of the title thereto, both parties to this action sought injunctive relief under the petition and cross-petition. The trial court entered judgment in favor of the plaintiff, Thurston, as hereinafter mentioned, and from the judgment the defendant, Western

Standard Uranium Company, has appealed to this court. The parties will hereinafter be referred to in the same manner as in the court below, or the defendant will be referred to as appellant and the plaintiff as appellee.

A pre-trial conference was had and by stipulation and agreement of the parties the following contentions of appellant were determined to be the only issues necessary for a decision herein. These contentions are as follows:

"(a) No valid discovery of mineral in rock in place was made by plaintiff or his predecessors in interest within the limits of any of said claims prior to defendant's entry thereon.

"(b) The discovery shafts or open cuts on each of said claims were inadequate in that none of them were of sufficient depth and no vein or lode of mineral in rock in place was cut thereby or shown therein."

■ Other issues, including the question of plaintiff's compliance with 68 Stat. 708, 709, 30 U.S.C.A. § 523(b), were raised in this pre-trial order but no further mention is made thereof and are not raised or argued in the brief on this appeal and are therefore waived. Mosko v. Smith, 63 Wyo. 239, 179 P.2d 781, and other cases cited therein.

After the pre-trial conference, the plaintiff moved for a summary judgment. The court sustained the motion insofar as the question of discovery is concerned, reserving the question as to discovery work for trial. The plaintiff, in support of the motion for summary judgment, submitted various affidavits, exhibits and depositions. The main facts of these will hereafter be set out.

Defendant, in opposition, filed a verified motion praying for denial of the application for summary judgment which is barren of evidentiary facts and consists of an attack on the evidence, its nature, and its form and further alleging that much of the evidence with regard to the factual situation herein is within the knowledge of plaintiff and that by reason thereof defendant is unable to present the facts by affidavit essential to justifying its opposition or meet the evidence relied upon by plaintiff.

On the same day defendant also filed an answer to the motion for summary judgment, also verified. This denies that the discovery work, as required by Wyoming law applicable thereto, was performed. It further denies that any discovery of minerals sufficient under the requirements of law has been made with respect to or within the confines of any of the claims herein covered and denies that sufficient showing has been made on any precise claim or that the affidavits and evidence show facts which might constitute the basis of a valid mineral discovery.

No attempt is made in either of these instruments to bring any facts into the record even though both are verified.

Defendant does not bring itself into either the spirit or direct phraseology of the rules or overlooks entirely Rule 56(e), Wyoming Rules of Civil Procedure, wherein it is stated:

"* * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."* (Emphasis supplied.)

The italicized portion of the rule is not a part of the Federal Rules. The clarity and simplicity of this amendment seem to require no interpretation or discussion to make clear its basic requirement. It must be remembered that some decisions under the rules are made inapplicable.

■ The test of the propriety of the grant of a summary judgment has been expressed as follows:

"* * * the court examines evidence on the motion, not to decide any

issue of fact * * * but to discover if any real issue exists. * * *"

Sprague v. Vogt, 8 Cir., 150 F.2d 795, 800.

See 3 Barron and Holtzoff, 1958, p. 122.

With this rule as a guidepost, we shall set out the facts substantially undisputed, which appear in plaintiff's showing in connection with the motion for summary judgment, leaving matters which relate in the main to the question of discovery work, such as the digging of pits, for later mention.

The facts as they appear in the affidavits, depositions and exhibits of plaintiff so far as they are pertinent or material to our inquiry as to the question of discovery and the correctness of the court's rulings on the motion for summary judgment are as follows:

The XYZ claims 1–13 were located originally and staked by plaintiff's predecessors under a lease application pursuant to Circular 7, AEC, and possession remained in those persons claiming thereunder from June 30, 1954, to and until October 9 or 10, 1957, when defendant, by its agents, servants and employees entered thereon, posted location notices and commenced work, claiming that the locations of plaintiff were void because of failure to comply with certain necessary requirements under the laws of Wyoming and the United States.

These claims are located in the Gas Hills area which is known to contain many valuable deposits of uranium ore, discoveries existing quite generally in the area. Plaintiff's predecessors in interest located these claims after taking into consideration the general geology of the area and the geologic conditions directly affecting these claims, particularly claims of known value lying from 1,500 to 3,000 feet therefrom. Thereafter they took up to fifty samples from adjoining and adjacent claims and had them chemically assayed, showing in some cases extremely valuable ore. They followed a "trend" or channel through the claims where good chemical assays had been taken to and into the area of these claims. The uranium deposits in this area are found in the upper Wind River formation and such deposits are epigenetic in character and are generally deposited in lenticular lenses or pods commonly occurring in the silty sandstones, but commercial deposits have been mined from lenses of conglomerate and other constituents of the Wind River formation. The deposits discovered have generally appeared in so-called "trends" which are or may be old stream beds or channels in the Wind River formation and such "trends" or whatever they may properly be called are bounded by barren rock that contains no uranium. Between the dates of June 26, 1957, and July 2, 1957, the plaintiff caused to be drilled on all of said claims a "drill hole" approximately four inches in diameter. These holes were from 100 to 300 feet in depth, being in no case less than 100 feet. These holes were all drilled immediately adjacent to the discovery pits. All of these drill holes were probed by the plaintiff using a radiometric device which was sensitive to and recorded the emission of rays from uranium ores. Each of said holes showed such reactions in two zones pierced by said drill holes. These two zones where the reactions were encountered are recorded on a graph and were below the water table in the upper Wind River formation. Copies of said graph readings, as recorded, were attached to an affidavit as an exhibit and appeared in the record at the time of the hearing on the motion for summary judgment. There are no minerals present in or which have been discovered in the upper Wind River formation below the water table which emit energy or rays which cause reactions on a Geiger counter or other radiometric device except uranium. Because of this fact, miners and operators in this area rely upon such radiometric readings as an indication of the presence of uranium ore. In addition thereto, their reliability is so established and accepted that radiometric devices are used in actual mining operations after discovery to control the grades mined and determine their suitability for mining. On the basis of such tests, claims are bought

and sold and large sums of money are spent in their development in this area. Properly calibrated instruments, properly operated, achieve the approximate same readings as indicated by chemical assay and are widely used and accepted by every operator in the Gas Hills area. The radiometric device used by plaintiff for probing had been compared for accuracy with one owned by Dr. F. L. Bartels who had by both samples and assays established dependable radiometric controls. Plaintiff had also relied on visual examination of samples which he identified as uranium minerals in these claims. The XYZ claims are similar to the Hope, Star, Wild Goose, Tom, Sap and Z claims which are adjacent and in some cases adjoin these claims and fifty chemical assays showing large amounts of uranium in some cases have been taken and the radiometric readings discovered in the XYZ claims are almost exactly the same as those discovered in the Hope and Star claims. In addition thereto, samples were taken from the drill holes, marked and stored; an assay thereof was secured after the institution of this suit. The results of this chemical assay were introduced at the pre-trial conference and show varying amounts of $U_3O_8$ to be present in said samples. In the Gas Hills area the uranium deposits lie within the upper Wind River formation and their deposition was made through the agency of water as a carrier thereof so that these deposits are termed epigenetic. These deposits occur in irregular lenses or pods and apparently in old stream beds or channels of ancient origin. The remainder of the upper Wind River formation in this area which was not exposed to the flow of water containing uranium in solution is barren rock. These deposits in old channels or stream beds, as is their commonly accepted origin, are now styled "trends" by miners and operators in this area and reliance is placed thereon in the locating of claims.[1] These claims lie on what plaintiff, a mining engineer and geologist, and several other

experienced prospectors believe is a trend with commercial production appearing in the so-called trend, both northerly and southerly from these claims and in claims similar in character.

The only showing in opposition to this motion made by the defendant is the affidavit of Robert L. Beseda, a geologist, filed herein. It concerns itself exclusively with an examination made of the surface of the disputed claims in December 1957 and a detailed examination of the discovery pits on March 8, 1958. This affidavit recites that he detected no "significant surface anomalies" on any part of the claims although this was not a detailed or close survey; that his examination of the discovery pits made on March 8, 1958, disclosed they were not then ten feet deep; that he discovered no anomalous radioactivity in any such pits; that no mineral was cut or exposed in any pit; and that these pits cut alluvium in all cases.

This affidavit does not attempt any definition of "significant surface anomalies" nor does it mention or contradict the drilling of the drill holes or the radioactivity evidenced by the graphs or assays. Significantly, it does not contradict or dispute the fact that no other mineral below the water table in the upper Wind River formation, except uranium, yields any appreciable radiometric count, nor does he in any manner dispute the evidence of the established use, reliability and acceptance of the use of radiometric devices in discovering and grading uranium ores. As an expert, he suggests no disagreement with the statements of plaintiff and other experts and laymen set out in plaintiff's affidavits as to the geologic factors and other indicia relied upon by plaintiff, resting only on his denial that the pits were of proper depth and the significance of the radioactive readings and anomalies, ignoring the uncontradicted evidence as to the drill holes and taking of the samples therefrom.

---

1. For a further discussion of the nature of uranium deposits in this area and generally, see Globe Mining Co. v. Anderson,

78 Wyo. 17, 318 P.2d 373, 376, 378, notes 3 and 4.

■ Defendant vigorously objects to the trial court's consideration of the results of the assays of the samples taken from the drill holes early in July 1957 and assayed after the institution of this action. These were properly received, if for no other purpose than in corroboration of the facts claimed by plaintiff as facts constituting his discovery.

The effect of subsequent events as a consideration upon the point of discovery is discussed in the Nevada case of Berto v. Wilson, 74 Nev. 128, 324 P.2d 843, 846, wherein it is said:

"While foresight rather than hindsight is the gauge of the reasonable miner's expectations, in this case subsequent events lend weight to the proposition that Wilson's expectations were justified and reasonable. Development work clearly demonstrated that the discovery was genuine. The shaft was dug at the very point of discovery. Along one side it exposed a vein of autunite. Samples from seven different points throughout the claims demonstrated that what Wilson and his witnesses had judged to be outcroppings of mineral-bearing ore or vein matter were such in fact."

■ Appellant strenuously contends that the above-mentioned facts are insufficient to sustain a finding of discovery, arguing that the trial court must have based its findings of discovery on radiometric readings and conjecture. He relies on the case of Globe Mining Co. v. Anderson, 78 Wyo. 17, 318 P.2d 373, as authority for the proposition that the court could not find discovery from these facts. With that we do not agree.

There is no reason to conclude that the trial court based its findings upon any particular one of these evidentiary facts nor is there any reason to believe that the court should or did ignore the many combined pertinent facts and factors which were disclosed by the plaintiff's showing on the motion for summary judgment and which

so definitely, on the facts herein, distinguish this case from the Globe case.

It may be conceded that a discovery could not be based on any *one* of the above facts but they are all relevant facts which should be considered as component parts of an assemblage of physical facts which might and would "justify a reasonably prudent man in expending money and effort in further exploration or development." For this court to rule otherwise would require it to adopt a position that a man or men engaging in a specialized business can never be reasonably prudent men unless their methods and operation follow the court's concept of the proper manner of conducting their business and substituting the judgment of the court for experts in their respective fields.

The use and value of the results of the Geiger counter, nucleometer or other radiometric devices have been recently discussed, in addition to the Globe case in this court, by courts in Colorado, Utah and Nevada. Dallas v. Fitzsimmons, 137 Colo. 196, 323 P.2d 274, 66 A.L.R.2d 551; Rummell v. Bailey, 7 Utah 2d 137, 320 P.2d 653. While no case examined allows the predication of a discovery solely on radiometric readings, the importance of such readings, when taken into consideration with other facts and factors, is universally recognized. To fail to do so is to deny progress or recognize that scientific tools by continued use and experience can and usually do evolve from unreliability to respected accuracy when properly applied to their ultimate uses.

In discussing the question of a discovery and the facts which may properly be considered, the court in the case of Rummell v. Bailey, supra, at 320 P.2d 657, said:

"In applying the above test it is to be kept in mind that the prospector may take into account not only the mineral found and the indications thereof, but the geology, the locations of other known ore bodies or mines in the area, the opinions of miners, geologists and other experts, and any other informa-

tion which mining operators regard as factors having a bearing upon the possibility of developing a mine, and in the case of uranium he may, of course, consider the Geiger count."

The low mineral content of the assayed samples and the fact that the radiometric probe readings are suggested as being so low as to be insufficient have little bearing in a controversy of this kind. This court earlier in the case of Columbia Copper Min. Co. v. Duchess Mining, Milling & Smelting Co., 13 Wyo. 244, 79 P. 385, 386, has said this in regard to questions of high or low assays in quoting Lindley who in turn quotes Judge Hawley:

" ' * * * "When the locator finds rock in place containing mineral, he has made a discovery within the meaning of the statute, *whether it assays high or low. * * *" ' "* (Emphasis supplied.)

The Nevada Supreme Court in the case of Berto v. Wilson, supra, at 324 P.2d 845, has shortly, yet sharply and logically, phrased this when it said:

" * * * Each is claiming possession of the same thing for the *same values*, whatever they may be. *An examination of values, therefore, is of little if any consequence.*" (Emphasis supplied.)

Particularly in this case are we impressed that the evidence shows that commercial deposits are found in lenses lying in mineralized trends which makes any mineralization significant.

It is also to be borne in mind that in cases involving the question of the validity of a discovery as between rival claimants, as locators claiming under the mineral laws, decisions exhibit a marked liberality in sustaining a finding of discovery. This view has been expressed by the United States Supreme Court in the case of Chrisman v. Miller, 197 U.S. 313, 25 S.Ct. 468, 471, 49 L.Ed. 770, wherein it is said:

"It is true that, *when the controversy is between two mineral claimants, the rule respecting the sufficiency of a discovery of mineral is more liberal* than when it is between a mineral claimant and one seeking to make an agricultural entry, for the reason that where land is sought to be taken out of the category of agricultural lands the evidence of its mineral character should be reasonably clear, *while in respect to mineral lands, in a controversy between claimants, the question is simply which is entitled to priority. * * *"* (Emphasis supplied.)

See further Lange v. Robinson, 9 Cir., 148 F. 799, 79 C.C.A. 1; Steele v. Tanana Mines R. Co., 9 Cir., 148 F. 678, 78 C.C.A. 412 (citing Lindley with approval at page 680); Berto v. Wilson, supra; 2 Lindley, Mines, 3d ed., p. 765 et seq.

The Supreme Court of Utah in the case of Rummell v. Bailey, supra, at 320 P.2d 656, states this matter clearly and simply as follows:

"The statute requiring discovery of the 'vein or lode' within the claim must be construed in accordance with its purpose which is to foster and encourage the discovery and development of mineral resources by providing a practical method of procedure for those who in good faith desire to search out and develop such resources in the public domain. *To this end the courts have been quite liberal in sustaining discoveries in favor of the first locator of a mining property. This is particularly so where the issue arises between him and another prospector who subsequently attempts to claim the same property.* We have heretofore given approval to this view and the doctrine is generally accepted, as reflected in the statement of the eminent authority on mining law, Lindley: 'The tendency of the courts is toward marked liberality of construction where a question arises between two miners who have located claims upon the same lode, or within the same surface boundaries, * * *. ' "(Emphasis supplied.)

For the reasons above set out we find that the trial court did not err in entering a

summary judgment insofar as the question of discovery is concerned.

█ In addition to its contention that the uncontradicted facts did not constitute a discovery as a matter of law, appellant strenuously contends that this was not a proper case for the entry of a summary judgment. This contention is grounded on the statement in the appellant's motion that certain of the material in the motion for summary judgment and submitted in connection therewith could not be admitted or denied because it was peculiarly in the knowledge of plaintiff. We assume this rather general observation might be made with varying degrees of truth about every action ever filed.

The argument in support of this contention made by appellant is directed entirely to the affidavit of James Thurston with reference to the samples taken from the drill holes and attacks its credibility insofar as it offers the foundation for the assay exhibit.

Appellant relies on Rule 56(b), Wyoming Rules of Civil Procedure, as a basis for the contention. We stated above that the defendant submitted no evidentiary facts to support his statement. This ignores a most important part of the rule relating to summary judgment.

The motion, though duly verified, is insufficient under Rule 56(b), failing as it does to show the nature of the facts unknown, their materiality, the attempt through proper proceedings to obtain the same or any intention or plan to proceed to the discovery thereof and a requested continuance for such purpose.

We have mentioned before Rule 56(e) and that it is different from the Federal Rule in placing a burden on the party opposing the grant of a summary judgment.

However, even under the Federal Rules we believe the holding would be the same. On this point is the case of United States for Use of Kolton v. Halpern, 3 Cir., 260 F.2d 590, 591, wherein appears a good discussion of this rule and where the court said:

"* * * The plaintiffs were accordingly entitled to summary judgment in their favor and the *expressed desire to the defendants' counsel for an opportunity to cross examine the plaintiffs' witnesses in the hope of turning up something in defense was not sufficient to prevent its entry,* 6 Moore's Federal Practice, 2d Ed. § 56.15 [4], p. 2142, at least in the absence of a showing, such as is contemplated by Rule 56(f), that all of the facts were necessarily within the exclusive knowledge of the plaintiffs and not accessible to the defendants. 6 Moore's Federal Practice, 2d Ed. § 56.24, pp. 2345–2348. It is obvious that such a showing could not be made in this case. * * *" (Emphasis supplied.)

See 6 Moore's Federal Practice, 2 ed., p. 2343; 3 Barron and Holtzoff, Federal Practice and Procedure, 1958, p. 173 et seq.

We shall accordingly proceed to the second question in this case, namely as to whether or not there was compliance with the law as to discovery workings. We have heretofore stated that the trial court did not dispose of that question when it passed on the motion for summary judgment. The court in that connection stated:

"* * * That said cause shall proceed to trial and be tried by the Court on the sole issue as to whether or not plaintiff or his predecessors in interest accomplished the necessary discovery work on said claims and each of them in compliance with the provisions of paragraph 1 of section 57–916 or section 57–917 Wyoming Compiled Statutes of 1945 or Chapter 88 of Wyoming Session Laws of 1955 prior to the entry of defendants on said claims on October 10, 1957."

█ On the trial thereof the court found generally for the plaintiff and against the defendant on the issue tried and entered judgment for the plaintiff.

In determining this phase of the matter it must be remembered, following an oft cited rule, we " 'must assume that the evi-

dence in favor of the successful party is true, leave out of consideration entirely the evidence of the unsuccessful party in conflict therewith, and give to the evidence of the successful party every favorable inference which may be reasonably and fairly drawn from it.'" Dulaney v. Jensen, 63 Wyo. 313, 181 P.2d 605, 606, and cases cited.

In addition thereto the rule specifically relating to cases of this character appears in the case of Globe Mining Co. v. Anderson, supra, at 318 P.2d 376, wherein it is said:

"This court in a case relating to the title of lode mining claims has previously enunciated the well-settled rule that 'unless the judgment is without support in, or is clearly against the weight of, the evidence, it will not be set aside.' Columbia Copper Min. Co. v. Duchess Mining, Milling & Smelting Co., 13 Wyo. 244, 79 P. 385, 387. Accordingly, it is desirable that we view the findings herein to determine whether or not each portion thereof is supported by or is clearly against the weight of the evidence, accepting that which is supported and rejecting that which is unsupported."

The facts herein are as follows:

These claims were located in the summer of 1954. At or shortly after their location, "validation" or discovery pits were excavated on all thirteen claims. These were all at least ten feet deep from the top of the ground and twelve feet wide. Each pit showed a reading on a radiometric device of from two to four times background reading with no pits showing less than two times background reading. This background count was taken on the surface of each claim and the instrument reading increased two to four times upon being taken into the pits.

These pits were, in all cases, cut in the upper Wind River formation and exposed this formation in varying thicknesses from nine to seven feet with a covering of soil varying from one to three feet. The pits at the time of the trial showed erosion of the walls and actual accumulation in the bottom in varying amounts from the four-year exposure to the elements.

These claims lie in the western part of the Gas Hills area and are situated in an observable "trend" with commercial production of uranium occurring both northerly and southerly from this group upon the same so-called trend.

A "trend" was defined in the testimony as an old channel or stream bed lying in the upper Wind River formation containing deposits of uranium which had been carried into the area of deposition in solution in percolatory waters. This results in an area of continuous mineralization varying greatly, however, as to mineral content. Discoveries in the Gas Hills area are commonly made and occur in these trends. The upper Wind River formation lying outside of these trends or areas of deposition is barren rock. An examination of these claims at various times in March and October 1957 and July 1958 disclosed, at that time, efflorescent uranium minerals in the walls or in the floor of all these pits except 1, 2, 3, 4, 11 and 13.

The upper Wind River formation is rock in place and where mineralization occurs it is a lode. All the pits in all the claims cut into the lode under this definition.

Defendant knew of the plaintiff's claim and his possession of this area.

In addition to the above evidence upon which the court might well have predicated its finding that plaintiff or his predecessors had performed the required or necessary discovery work on these claims, there is the uncontradicted evidence of the drilling of the so-called "drill holes" in each of these claims immediately adjacent to the original discovery pits.

The facts in connection with the drilling thereof have been earlier set out herein in connection with the court's finding of discovery in these claims. Little will be served by a repetition of this evidence. But, in addition to the testimony as to these facts, there was admitted in evidence plain-

tiff's exhibit 6, thirteen "additional Location Certificates" recorded by plaintiff claiming under the so-called "drill hole" law.

■ Appellant seeks to contradict this evidence only by the testimony of the witness Beseda. The testimony as to physical facts of the work and indications in the discovery workings is based on an examination made nearly four years after these pits were dug. He further expresses a professional opinion that these pits were cut in alluvium rather than rock in place and that he found no radioactive anomalies nor did the readings testified to constitute significant radioactive anomalies.

Defendant contends that under this showing the court could not find these were discovery workings because they did not expose the lode or vein. This at best only created a conflict in the evidence resolved against defendant by the finding of the trial court. This is a question of fact to be so resolved by the court.

"* * * Whether a vein or lode has been discovered or exists within the limits of the location in controversy, and as to the continuity of ore and mineral matter constituting the length, width and extent of any particular vein or lode, is always a question of fact to be determined by a jury, or by the court if the case is tried without a jury. * * *" (Emphasis supplied.) Dallas v. Fitzsimmons, 137 Colo. 196, 323 P.2d 274, 278, 66 A.L.R. 2d 551.

It is to be noted Beseda corroborated the testimony of plaintiff and his witnesses as to the existence of a so-called trend, favorable for deposition of uranium. Nor does he deny or attack the geologic theory of plaintiff as to the existence of only one mineral or material, i. e. uranium, in this area lying below the water table which causes a reaction on a radiometric device nor does he deny the use of radiometric devices and that experienced miners rely thereon in this area.

■ The defendant argues as error the admission of any testimony as to the drilling done by plaintiff during the summer of 1957 on the ground of surprise. However, the court advised the defendant "If surprise is definitely indicated, you should be given opportunity to rebut it. I will give you that opportunity by continuing the hearing." Examination of the record indicates no request for continuance on this ground nor any statement of reason why it constituted a surprise. It must be therefore considered waived.

■ Appellant further objects to the admission and consideration of plaintiff's exhibit 6, being the thirteen "additional Location Certificates" filed under the so-called "drill hole" law. This objection is based upon the contention that there was a failure to show positive compliance with this law in every respect, i. e. the failure to fill the discovery pits and make this action a matter of record and the failure to affirmatively state in the certificates that the work was done to obtain the benefit of the law.

We think these were properly admitted for at least two purposes:

1. As evidence of discovery workings in themselves under the so-called "drill hole" law.

2. As corroborative of the sufficiency of the claimed discovery workings and the nature of the formation.

The earlier comments in the case of Berto v. Wilson, supra, made in connection with the finding on discovery apply with equal force here as to their corroborative nature.

■ A different view of this might be taken if defendant had no knowledge of the claim of the plaintiff and the boundaries of the area disputed. The recording failures complained of cannot give the defendant such notice nor may he claim by reason of the failure to so record. "The law is well established that, where there is actual notice, constructive notice becomes unnecessary." Globe Mining Co. v. Anderson, supra, at 318 P.2d 384.

The defendant contends that the filling of the discovery pits and the recording of a statement of the filling and an affirmative statement that this work was done to obtain benefit of said law is mandatory under this statute to claim the benefits thereof. This of course involves a construction of Ch. 88, S.L. of Wyoming, 1955 (§ 30–6, W.S. 1957).

It is necessary then to ascertain the intention of the legislature by the examination of this Act.

The portion of the Act upon which defendant's contention is bottomed is as follows:

"The owner of any mining claim located prior to the effective date of this act * * * and who has performed discovery work may avail himself of the provisions hereof by making the drill hole or holes herein provided for and filling any discovery cut previously made, and making and placing of record the affidavit herein provided for, together with a statement of the filling of such discovery pit or cut, and that the said work was done and the affidavit made for the purpose of obtaining the benefits of this act."

It is to be observed that this statute provides no penalty for the failure so to do. It does not provide that the claims shall be void or that the locator is prohibited from claiming thereunder in event of his default, all of which are important criteria when considering whether a statute be mandatory in its terms.

"* * * in State v. Genero, 39 Wyo. 325, 271 P. 17, this court said (page 18): 'The statute says nothing about the effect of a failure to comply with it, and there may be good reasons for holding that it ought to be construed as merely directory.'

"* * * The intention of the lawmaking body to be gathered from the terms of the statute in the light of the objects and purposes intended to be accomplished is always the controlling factor in the construction of legislative acts. * * *" In re Lambert, 53 Wyo. 241, 80 P.2d 425, 428.

The case of In re Roberts' Estate, 58 Wyo. 438, 133 P.2d 492, 499, contains a short and fair statement of other goals sought in such construction as follows, "A result which is reasonable is sought."

In the light of this short statement of the basic rule of construction, it is now important to determine what is the purpose or the office of discovery pits or cuts or workings.

2 Lindley, Mines, 3d ed., p. 803, gives the object as follows:

"The object of this class of legislation is twofold:—

"(1) To demonstrate to a reasonable degree of certainty that the deposit sought to be located as a lode is in fact a vein of quartz or other rock in place;

"(2) To compel the discoverer to manifest his intention to claim the ground in good faith under the mining laws."

Neither of the above objects would be accomplished or served by the mandatory application of the statute.

The only possible suggested purpose which appears from an examination of this statute is protection of the surface and the rights of surface users, and a fair inference seems to be that this is not a condition precedent but an incident or regulation prescribing mining methods or operation on public lands.

A different construction might be dictated insofar as this statute might affect the United States or any other landowner who owned, controlled or asserted the right to the use of the surface. There is no possible prejudicial effect on the defendant or its rights insofar as it occurs to us or suggested by defendant.

This court has previously said:

"A statute may be mandatory in some respects and not in others. 59 C.J. 1072. In so far as it is inapplicable to the plaintiffs in error, *and in so far as the failure to comply therewith can not prejudice them, it cannot be consid-*

*ered mandatory as to them. * * *"* (Emphasis supplied.) Hirt v. City of Casper, 56 Wyo. 57, 103 P.2d 394, 397. See also 82 C.J.S. Statutes § 374.

Defendant at no time has denied the drilling of these holes but seeks only to avoid their effect by a strict, technical construction of this portion of the statute without suggestion that it worked any injury on him.

We do not believe it can reasonably be said that it was the intent of the legislature to disturb or overthrow the established rule in this state, proven by years of use, that "where a locator attempts in good faith to comply with the law the courts are inclined to be liberal in construing his acts so as not to defeat his claim by technical criticism." Globe Mining Co. v. Anderson, supra, at 318 P.2d 385. Without a clear statement of such intention, we should be loath to so hold.

Nor as in this case, without a specific statement in this statute of invalidity as above mentioned, can we believe that in seeking *a result which is reasonable* any logical or equitable reason exists to construe this statute in such manner as to place the plaintiff on the horns of a dilemma and insist that he must make a choice between the discovery pits or drill holes at his peril.

Particularly significant, both as affecting discovery and discovery workings, is the 1955 statutory enactment making drill holes the equivalent of discovery shafts or cuts. This is an obvious attempt by the legislature to adapt the laws to the factual situation arising in the exploration for uranium and to promote and encourage the development thereof upon the public domain. Note these words:

"* * * at least one of which shall cut or expose deposits of valuable minerals sufficient in quality to justify a reasonably prudent man in expending money and effort in further exploration or development." Ch. 88, S.L. of Wyoming, 1955 (§ 30–6, W.S.1957).

Being undoubtedly cognizant of the confusion and difficulty in reconciling definitions or lodes and veins as appeared in earlier decisions and made under different conditions of deposition, the legislature has adopted a definition in aid of and to be construed with the Federal statute, "no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located." R.S. § 2320 (1878), 30 U.S.C.A. § 23.

In conclusion, it is stated in 58 C.J.S. Mines and Minerals § 85a, p. 146, that "The one asserting that a claim is open to relocation has the burden of proving it." We think that the defendant and appellant herein has fallen far short of this burden. Taking the evidence as a whole, we think that plaintiff and his predecessors in interest fairly complied with the statute requiring discovery work. The judgment of the trial court is accordingly affirmed.

Affirmed.

PARKER and HARNSBERGER, JJ., not participating.