[Civ. No. 7510.  First Appellate District, Division Two.—December 22, 1930.]

In the Matter of the Estate of FREDERICK J. VETTER, Deceased.  HENRY J. ANGELO, Appellant, v. ANNA VETTER, Respondent.

Kington & Cunningham for Appellant.

Theodore J. Roche, Keogh & Olds and Henry E. Monroe for Respondent.

STURTEVANT, J.—Henry J. Angelo commenced a proceeding to obtain a judgment admitting an alleged lost or destroyed olographic will to probate. Process was served on Anna Vetter, the surviving wife of the decedent, Frederick J. Vetter, and she appeared and answered. A trial was had before the trial court. The trial court made findings of fact in favor of the surviving wife Anna Vetter and from a judgment entered thereon the plaintiff has appealed under section 953a of the Code of Civil Procedure. In his opening brief the plaintiff contends that the findings of the court are unsupported by the evidence; the findings are contrary to the evidence; the court prejudicially erred in the admission of evidence; the court prejudicially erred in excluding evidence; and the court arbitrarily found and decided contrary to evidence and law. True it is that certain declarations of the deceased were objected to by the plaintiff and that his objections were overruled. However, the plaintiff does not brief the ruling made by the trial court showing wherein any error was committed, nor that the error, if any, was prejudicial to the plaintiff. In his brief the plaintiff earnestly contends that the trial court arbitrarily disregarded the testimony given by the witnesses called by the plaintiff. In this connection the plaintiff claims there was no conflict in the evidence and that the plaintiff proved a full and complete case. In reply the defendant contends that there was an abundance of conflict in the evidence, and furthermore she contends that the case

as presented by the plaintiff failed to prove certain material issues.

Richard Spreckels, a witness called by the plaintiff, testified that in the month of May, 1915, he met the deceased in the office of an attorney at law, Charles L. Patton. He was not sure whether the plaintiff was present. He testified that at said time and place the decedent produced a paper which he handed over to the witness and that the paper had written thereon "I give to my friend, Henry J. Angelo, fifty thousand dollars." The witness further testified that the paper was dated. The year of the date was 1915 but he could not remember the month nor the day of the month. He did not testify whether the place of the dating was or was not on the paper. The signature on the paper was "Fred Vetter". The foregoing testimony was given by the witness in the month of June, 1928. The witness had been acquainted with the decedent some months prior to the meeting just described. Mr. Vetter died August 3, 1915. After that date and before the end of the year 1915 the witness saw the plaintiff on several occasions. At one time he asked the plaintiff if he had received his fifty thousand dollars and the plaintiff said he had not. It does not appear that he and the plaintiff had any other discussions on the subject of the will until the date of the trial. He was not sure whether the writing which he saw contained words or figures, or both, expressing the sum fifty thousand dollars. There was evidence introduced that the decedent never signed his name omitting the middle initial, but wrote it "Fred J. Vetter". The witness testified that he had received letters from Mr. Vetter but gave no testimony regarding the manner in which the decedent signed his name.

Fred J. Hildebrant testified that he knew both Mr. Vetter and the plaintiff. In the early part of 1915 the witness and the plaintiff were in a room at the residence of Mr. Angelo. Mr. Angelo went out of the room and was gone for about five minutes. While he was out the witness testified that Mr. Vetter took out of his pocket an envelope, opened it, and took out a piece of paper on which appeared in the handwriting of Mr. Vetter, "I leave to my friend Henry Angelo the sum of fifty thousand dollars. Fred Vetter." No explanation of any kind or nature was given by the witness why the decedent happened to exhibit the

paper to him. Regarding the date he testified "All I can remember 1915". As to the familiarity of the witness with the writing of the decedent he testified that about two years before in a store in which he was employed he saw the decedent sign orders for goods. After the above occurrence the witness remained in San Francisco about three years. Then he was out of town five years. He did not see Mr. Vetter again before the death of the latter. Before the death of the decedent the witness did not tell Mr. Angelo what he had seen, but he testified that in 1923, he told Mr. Angelo the same thing which he testified to on the trial.

The plaintiff testified that in the forepart of 1915 the decedent showed to him a paper on which was written: "I give Henry Angelo fifty thousand dollars." This witness also stated the date as 1915 but did not remember the month nor the day of the month, neither did he state the place of the date. The document was signed "Frederick Vetter". It was all in the handwriting of the decedent. The will was so exhibited to him at the safe deposit vault. When the decedent exhibited the document he said to the witness: "You never have to worry or want for anything any more in your old age."

The witness Beauce testified that he and the plaintiff were assistants in the tax collector's office. He recalled the death of Mr. Vetter on August 1, 1915. Several days before his death Mr. Vetter came in. The witness, the plaintiff, and Mr. Vetter were the only ones present. The witness was on one side of a desk and the plaintiff was on the other side. As the decedent came in he took an envelope from his pocket and speaking to Mr. Angelo said: "Here is my will. You needn't worry the rest of your life." And turning to the witness he said: "Do you think fifty thousand dollars is enough for this young man?"

Adverting to the conversation in the tax collector's office the plaintiff testified that the decedent said: "Here is my will" and handed it to me and I opened it and looked in the envelope and took it (the will?) out and said "Fred, I don't want this. People might think I influenced you by taking it. I don't want it. Why did you take it out of the safe deposit box?" He put it back in his pocket.

It does not appear that any witness made any memoranda at any time of any of the foregoing facts.

There was oral evidence and written evidence that commencing as early as the year 1911 the plaintiff had received many gratuitous donations in the form of checks from the decedent. After the defendant took out letters of administration this plaintiff presented to her, on June 15, 1916, a claim for $4,244.50 in which the payment was alleged to be contingent on the sale of the Market Street property. The plaintiff testified that he consulted as his attorneys among others Mr. Charles L. Patton, Mr. John P. Jones, Mr. Daniel Ryan, Mr. Francis V. Keesling, Mr. Joseph Levine and finally Messrs. Kington and Cunningham who commenced this proceeding by filing the petition on May 29, 1928. The record does not show that to any one of those attorneys, except Mr. Jones who was dead at the time of the trial and except the last two, the plaintiff ever stated the fact that the alleged will was ever in existence. ▇ It is the foregoing evidence which the plaintiff contends was uncontradicted and which the trial court should have accepted and followed. This claim assumes that the evidence was uncontradicted. Men's minds may differ. If the trial court determined that in the extreme accuracy of detail and the close agreement of the statements of the witnesses rested its weakness and was its contradiction, we could not say it erred. It is very peculiar, and quite out of the ordinary, that memories should carry so accurately and for such a long period of time almost all of the facts in almost the same identical words. While we cannot say under such circumstances it must necessarily be rejected as unworthy of belief, yet it must inevitably occur that the trial judge will regard it with serious misgivings. (*Turman* v. *Ellison*, 37 Cal. App. 204 [174 Pac. 396].) In *Davis* v. *Judson*, 159 Cal. 121, at page 128 [113 Pac. 147, 150], the court was considering a similar question. Among other cogent remarks the court said: " . . . and as it is within the province of the trial court to determine what credit and weight shall be given to the testimony of any witness, this court cannot control its finding or conclusion denying the testimony credence, unless it appears that there are no matters or circumstances which at all impair its accuracy." (See, also, *Nichols* v. *Pacific Elec. R. Co.*, 178 Cal. 630, 631,

632 [174 Pac. 319].) Certainly we are not able to say as a matter of law that there were no matters or circumstances in the instant case which at all impaired the accuracy of the evidence given by the witnesses quoted above.

There was no testimony that the purported will was written in San Francisco or any other particular place. There was testimony that it bore a date consisting of a statement of the year, the month, and the day of the month, but there was no evidence as to what month or what day. The purported will as described by the witnesses included a legacy to this plaintiff. The testimony does not show that it did not include other legacies or bequests and if so what they were. Under a very slight variation in the facts it was held that the proof was insufficient. (*Estate of Price,* 14 Cal. App. 462 [112 Pac. 482].) ▉ No claim was made that during the lifetime of the testator without his knowledge the purported will was destroyed fraudulently or by public calamity. It was therefore statutory that the will should not be proved as a lost or destroyed will unless it was proved to have been in existence at the time of the death of the testator and unless its provisions were clearly and distinctly proved by at least two credible witnesses. (Code Civ. Proc., sec. 1339.) Moreover there was testimony given in behalf of the defendant that the decedent objected to making a will because he entertained the idea that the making of a will would hasten his death. If he entertained that opinion regarding a will which would dispose of all of his property, it may readily be assumed that he entertained the same opinion regarding a will that would dispose of a part of his property. There was also the positive testimony of the defendant that she never saw the decedent's will and never destroyed it. And there was the positive statement of her attorney that immediately after the decedent's death he made a search for a will and did not find one.

We find no error in the record. The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 21, 1931, and a peti-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 19, 1931.