IN THE MATTER OF THE ESTATE OF ALBERT DUFFILL, DECEASED.

MARTHA J. DUFFILL, APPELLANT, *v.* MARY WOOD DUFFILL AND PHYLLIS ALBERTA DUFFILL, MINOR, BY W. R. CHAMBERLAIN, HER GUARDIAN AD LITEM, RESPONDENTS.

No. 3144

November 2, 1936.                    61 P. (2d) 985.

*Roger Foley* and *O. H. Speciale,* for Appellant:

*Musick & Burrell, Vance Booker, C. D. Breeze, Howard Burrell,* and *George Martinson,* for Respondent Mary Wood Duffill; *Esmond Schapiro, Leo A. McNamee,* and *Frank McNamee, Jr.,* for Respondent

226

Phyllis Alberta Duffill, by W. R. Chamberlain, her Guardian:

## OPINION

By the Court, COLEMAN, J.:

Appellant, the mother of decedent, instituted proceedings to probate a lost will, alleged to have been executed February 19, 1932, wherein decedent left $200,000 to her and the balance of his estate to his widow and daughter. Judgment was rendered against her, from which, and an order denying a new trial, an appeal has been taken.

At the conclusion of the taking of the testimony and of the oral arguments of counsel, the court delivered a clear-cut, concise statement of his reasons for concluding that no will had been executed by the deceased as contended by appellant, and, if there had been, that it was revoked prior to the death of deceased. Formal findings of facts were thereafter made by the court, in accordance with its oral decision.

Our statute relative to the establishment of a lost or destroyed will reads: "No will shall be allowed to be proved as a lost or destroyed will unless the same shall be proved to have been in existence at the time of the death of the person whose will it is claimed to be, or be shown to have been fraudulently destroyed in the lifetime of such person, nor unless its provisions shall be clearly and distinctly proved by at least two credible witnesses." Section 9624 N. C. L.

Whatever might have been our conclusion had we presided at the hearing in the lower court, we are satisfied that the conclusion reached to the effect that no such will, as contended for, was ever executed, must be sustained. We would not be justified in reversing the judgment and order appealed from unless it clearly

appears that the wrong conclusion was reached. Willis · v. Brotherhood, 55 Nev. 448, 38 P. (2d) 974.

Proponent relies upon the evidence of witnesses Biffle, Blanco, Montt, and Koebig to show that the terms of the statute were complied with. Other evidence was introduced tending to corroborate these witnesses.

We will test the testimony of the persons named, to ascertain just what each bore witness to.

Biffle, who signed as a witness, testified that he did not read any part of the will except the heading, and that his only knowledge of its contents was based upon the statement of deceased. Clearly, his testimony does not pretend to show the provisions of the will.

The witness Venturo Blanco testified that when he went to the home of Dr. Michelena in 1932 he found decedent, whom he had known for about three years, in bed, and that as he went into the bedroom "I said, hello, Albert. If you think you are going to die don't forget me in your will. Jokingly of course. He said, 'Don't forget, I am an attorney, my will is already made.' He asked me to hand him a brief case and he pulled out a bunch of papers and he handed it to me and I read it." He then testified to the provisions of the will.

The witness Montt, a Hollywood actress, testified that about the early part of December 1932, she met decedent at Dr. Michelena's house in Los Angeles; that he was sick with a severe attack of rheumatism; that he was in the living room and wanted to go into the bedroom and lie down; that she got his crutches, and with the help of a maid they got him to the bedroom. "The · doctor told me where the medicine was and I gave him the medicine; then he said to me, 'It won't be very long now, I want to have as good a time as I can.' I said, 'Don't talk that way.' I tried to change the conversation because he was depressed. He said, 'I will prove it to you—I am prepared for it.' He asked me to go to the dresser and bring him the brief case. I didn't want to because I did want to change the conversation but he insisted, so I brought a brown leather case and he

opened it and took a paper from inside, was about two pages, written in typewriter, in envelope, with the blue paper in the back, and he asked me to read it. I read it and he says it was his will."

This witness then testified to its provisions, stating them to be as did the witness Blanco. She also testified that decedent stated to her at the time: "I am doing this to protect my mother because I have meant everything to her and she means everything to me."

She was asked it she saw the name of deceased, to which she replied: "Yes, he said it was his signature, and there were two other signatures beside it," and that decedent's signature was on the side.

She further testified:

"Q. What was the occasion for your going there this day? A. I used to go there almost every day.

"Q. Dr. Michelena was not there? A. That is why I went, to help take care of the sick.

"Q. Were you a nurse? A. No, I was not a nurse, just a friend.

"Q. Of Albert Duffill? A. Yes.

"Q. You went over there to take care of him as a casual acquaintance? A. Yes."

Dr. Koebig testified that the occasion of his meeting decedent was in consultation with Dr. Michelena. He testified to the terms of the will and that its provisions were as stated by Blanco and Montt. He testified that the decedent showed him his will, the occasion therefor being that there was to be an operation on the knee of decedent and he stated to decedent that he should have his affairs in shape, and that decedent replied: " 'I am an attorney, and you know I take care of those things.' * * * He then picked up a blue-backed paper and he said, 'This is the will and testament that I made a year before,' and he opened it up * * *. He said, 'Doctor, is this going to be such a severe adventure that you have to take my interests to heart so much, is it dangerous?' And I said, 'No' but that all major operations must be prepared for because they are a major undertaking."

He also testified that decedent's signature was at the bottom of the will.

Of the witnesses who testified in behalf of proponent there were only three who purported to testify to the provisions of the will from their own knowledge. They were Blanco, Montt, and Koebig. The circumstances under which Blanco claims to have read it were very unusual. The same may be said of the testimony of the witnesses Montt and Koebig. The trial judge rejected the testimony of these witnesses. He saw them upon the stand, and we are not disposed to say that he abused his prerogative in rejecting their testimony in toto. In fact, the witness Koebig was impeached by an affidavit which he had previously made, in which he stated that he had read only a portion of the will. A peculiar thing about this case is that the mother of decedent testified that he had never told her of the terms of the alleged will, as did his father, and several other persons close to him. Furthermore, the witness Montt testified decedent signed the will on the side, and the other two witnesses testified he signed at the bottom.

It was sought to impress upon the court that proponent was the object of decedent's fondest hope and solicitude. No doubt there was a deep bond of affection between them; however, decedent showed his thoughtfulness of her by leaving her $75,000 in insurance.

It is a rather remarkable thing that the witnesses who testified to the exact terms of the will were in no way interested in its provisions, yet could remember, three years later, four distinct provisions of it.

Our legislature, while making provision for the proof of a lost or destroyed will, realized that the establishment of such documents should be clearly and distinctly proven by at least two credible witnesses. It sought to prevent fraud and a miscarriage of justice in such matters. In re Estate of Vetter, 110 Cal. App. 597, 294 P. 438, 439, in considering just such a question as confronts us, relative to the weight of the testimony, the court said: "If the trial court determined that in the

extreme accuracy of detail and the close agreement of the statements of the witnesses rested its weakness and was its contradiction, we could not say it erred. It is very peculiar, and quite out of the ordinary, that memories should carry so accurately and for such a long period of time almost all of the facts in almost the same identical words. While we cannot say under such circumstances it must necessarily be rejected as unworthy of belief, yet it must inevitably occur that the trial judge will regard it with serious misgivings."

This statement is very fitting to the facts of this case.

The supreme court of California, in Estate of Kidder, 66 Cal. 487, 6 P. 326, 329, quotes approvingly as follows: " 'To authorize the probate of a lost will by parol proof of its contents depending on the recollection of witnesses, the evidence must be strong, positive, and free from all doubt. Courts are bound to consider such evidence with great caution and they cannot act upon probabilities.' 'This strictness is requisite, in order that courts may be sure that they are giving effect to the will of the deceased and not making a will for him.' Matter of Johnson's Will, 40 Conn. [587] 589."

■■ In the very nature of things there was no possibility of a contradiction of the testimony of the witnesses mentioned, but it is a well-recognized rule that a court is not bound to accept uncontradicted testimony. It may consider the inherent improbabilities of the statements of witnesses. 23 C. J. 48, note 38; 4 Wigmore (2), sec. 2034.

It is inherently improbable that a lawyer—one so careful as the witnesses Blanco and Koebig would have us believe decedent was—would be carrying around with him, as claimed, such an important document. Furthermore, it is inherently improbable that he would "insist" on showing his will to the witness Montt, as she testified. In fact, the trial judge may have thought the entire testimony of these witnesses improbable. If he had said so, we would not question the statement in the least. No doubt he was of that opinion.

Some other witnesses testified in the matter, but we do not deem it necessary to refer specifically to their testimony.

The very will in question here seems to have been before the California courts, In re Duffill's Estate (Cal. App.), 58 P. (2d) 185, but, as no plea of res adjudicata was made in this matter (as it seems there might have been, 15 R. C. L. p. 997; 34 C. J. 759), we do not consider it.

It not clearly appearing that the trial court did not reach the right conclusion upon the evidence, the judgment and order appealed from are affirmed.

ON PETITION FOR REHEARING

January 25, 1937.

*Per Curiam:*

Rehearing denied.