## WESLEY W. WIECHMANN AND PACIFIC INVEST-MENT, INC., A NEVADA CORPORATION, APPELLANTS, v. PRESTON Q. HALE, RESPONDENT.

No. 4302

December 29, 1960          358 P.2d 113

*Ernest S. Brown,* of Reno, for Appellants.

*Leonard T. Howard* and *Robert H. Moore,* of Reno, for Respondent.

## OPINION

By the Court, PIKE, J.:

This is an appeal from the judgment of the trial court against appellants, jointly and severally, for the sum of

$1,475, representing the amount of a real estate broker's commission found to be due from them to respondent.

The real estate transaction involved a house on Ferris Lane in Mayberry Park Subdivision in Washoe County, Nevada.

One Wiechmann, as authorized agent for the owner of the premises, Pacific Investment, Inc., listed the dwelling house for sale with respondent, a real estate broker, at a sale price of $29,500. Thereafter a salesman for respondent showed the premises to a Mrs. Flowers who evinced her interest in purchasing the premises, but who stated her wish that her husband also see them as a basis for reaching a decision. Mrs. Flowers also inquired of respondent's salesman whether certain rooms in the then uncompleted house could be painted a different color and whether a certain type of light fixture could be placed in the bathroom. On the Sunday following, Mrs. Flowers returned to the subdivision with her husband for the purpose of having Mr. Flowers inspect the house. Mr. and Mrs. Flowers found no one at the house that Mrs. Flowers had been shown by respondent's salesman, and went to another nearby house, also under construction, looking for respondent's salesman. There they met a Mr. Nesbitt and a Mr. Dennis. Both the house in which this meeting occurred and the house previously shown to Mrs. Flowers were in the process of construction by the construction firm of Dennis and Roberts, of which Dennis was a member. Dennis was also a real estate broker. Upon Mrs. Flowers' inquiring for respondent's salesman and stating that such salesman had shown her the house in which she was interested, Nesbitt advised her that Bowers, respondent's salesman, had nothing to do with the sale of such house. Nesbitt and Dennis then conducted Mr. and Mrs. Flowers through the house which Mrs. Flowers had previously examined. Nesbitt, a real estate broker and agent for Dennis subsequently delivered a deposit receipt to one Robert Stoker, who was president of Pacific Investment, Inc. Stoker was also office manager of Wiechmann's contracting firm. Stoker testified that he signed the deposit receipt, which indicated that Mr. and Mrs.

Flowers had made a deposit on the purchase price of the home. About a month later, in July 1957, a deed from Pacific Investment, Inc., as grantor, naming Mr. and Mrs. Flowers as grantees, was executed, and some six days thereafter the same was recorded. The sale price was $30,500, a thousand dollars more than the sales price for the property, as listed with respondent by Wiechmann. The deposit receipt placed in the escrow pertaining to the sale of the premises was signed by Pacific Investment, Inc., Stoker, and the Dennis and Roberts corporation. There was no evidence that any real estate commission was paid to either Nesbitt or Dennis who effected the actual sale to Mr. and Mrs. Flowers. The only changes or additions shown to have been made or added at the premises were those which had been previously discussed by Mrs. Flowers with respondent's agent Bowers. They pertained to the color of paint in certain rooms and a certain type of light fixture in another room. The basis of the increase of one thousand dollars over the sales price as listed with respondent does not clearly appear.

(1) In its written findings of fact the court found that Wiechmann listed the property with respondent, with conditions "* * * providing, among other things, that upon the plaintiff producing a ready, willing and able buyer * * * Wiechmann would pay to plaintiff a commission of 5% of the sale price;" that Wiechmann was, at the time of making said agreement, the agent of Pacific Investment, Inc., although Wiechmann did not at that time disclose such agency. These further findings were also made:

"5. That plaintiff, PRESTON Q. HALE, in accordance with the terms and conditions of the oral agreement did produce a ready, willing and able buyer of the real properties, namely: GARLAND and ALDINE FLOWERS and that notice of the production of this buyer was given to defendants by telephone in various telephone conversations by and between plaintiff, PRESTON Q. HALE, and agent of the defendants, ROBERT STOKER, General Manager of PACIFIC INVESTMENT, INC., prior to sale of the same real properties to Mr. and Mrs. Garland Flowers by a third party.

"6. That prior to the consummation of the sale to Mr. and Mrs. Garland Flowers by the defendants, WESLEY W. WIECHMANN and PACIFIC INVESTMENT, INC., plaintiff, PRESTON Q. HALE, did notify them that the FLOWERS were clients of his office and that he had produced them as prospective buyers.

"7. This Court finds that plaintiff, PRESTON Q. HALE, did fulfill the terms and conditions of the oral agreement by producing a ready, willing and able buyer for the sales price of Twenty Nine Thousand Five Hundred Dollars ($29,500). That Mr. and Mrs. Garland Flowers did purchase the real properties through a third party real estate agent and broker at a sales price of Thirty Thousand Five Hundred Dollars ($30,500)."

Appellants contend that Findings 5 and 6 are not supported by the evidence. They also urge that, as respondent did not effect a sale of the premises, he was not entitled to a commission, in the absence of a showing of fraud by the owner, preventing him from making the sale, citing Ramezzano v. Avansino, 44 Nev. 72, 189 P. 681, and Close v. Redelius, 67 Nev. 158, 215 P.2d 659. We reject both contentions.

Respondent does not assert fraud on the part of the seller as preventing the sale by respondent, but relies upon the general rule recognized in each of the above cited cases of this court "* * * that before a broker can be said to have earned his commission he must produce a buyer within the time specified in the terms of the agency, when the time is limited, ready, willing, and able to purchase at the price designated by the principal." Respondent complied with these conditions, and is entitled to the commission.

After finding that the agreement between Wiechmann and respondent, for the payment of the real estate commission was in accordance with the above stated general rule, the court also found in Finding No. 5 that respondent had notified Stoker of the production of such buyer prior to the sale of the real property to Mr. and Mrs. Flowers by a third party. Appellants contend that the portion of such finding, relating to notice, is not supported by the evidence. With this contention we are unable to agree. The record shows that respondent's

agent Bowers showed the real property to Mrs. Flowers on June 21, 1957. It also affirmatively establishes that neither Nesbitt nor Dennis met either Mr. or Mrs. Flowers prior to June 23, and that the purchasers did not make a down payment until the following day when the deposit receipt was delivered by Nesbitt to Stoker. Respondent Hale testified that, on the same day upon which his salesman Bowers conducted Mrs. Flowers through the premises, respondent telephoned Stoker and discussed with him certain changes relating to color of paint and a lighting fixture proposed by Mrs. Flowers. Although Stoker denied recollection of such conversation, the trial court accepted respondent's testimony as being correct on this point. The findings referred to are each supported by substantial evidence and will not be disturbed upon this appeal.

Judgment affirmed, with costs to respondent.

McNAMEE, C. J., and BADT, J., concur.