JOSEPH S. HOBSON AND THELMA L. HOBSON, His
   WIFE, APPELLANTS, v. ELIZABETH M. OLIN,
   RESPONDENT.

No. 4791

February 4, 1965                    398 P.2d 708

*Ralph M. Tucker,* of Reno, and *Philip M. Marfisi,* of
Elko, for Appellants.

*Orville R. Wilson,* of Elko, for Respondent.

# OPINION

By the Court, McNamee, C. J.:

This is an action to recover a real estate commission which respondent claimed was due her by reason of the sale of the Hobson ranch by Hobson to Tomera. The complaint alleges four causes of action: A contract between the parties wherein Hobson agreed to pay a 5 percent commission on a sales price of $200,000. The second cause of action is the same as the first except there was no allegation that Hobson promised to pay 5 percent. The third cause of action alleges that respondent was employed by Hobson to procure a purchaser and after receiving the benefit of respondent's services conspired to deprive her of her commission. The fourth cause of action is in quantum meruit.

After a trial without a jury the lower court entered judgment in favor of respondent and against both appellants in the sum of $10,000 based on its findings of fact that respondent Olin was a licensed real estate broker and that Anita Marisquerena was a duly licensed real estate salesman for her; that when Marisquerena informed Hobson that she had an offer to purchase the Hobson ranch for $180,000, Hobson refused the same and requested $200,000 net to him; that Marisquerena contacted Tomera and that he orally offered to purchase the property for $205,000. Hobson refused this offer because he wanted $200,000 net to him. Marisquerena then obtained from Tomera an offer to purchase the property for $210,000, which would be $200,000 to Hobson and the $10,000 would go towards her commission. Tomera and Hobson met for the first time either before or after the $210,000 offer was made. From the nature

of the evidence the trial court properly could find that this first meeting took place after Tomera made his $210,000 offer.[1] At this first meeting Tomera and Hobson each stated to the other that they had not dealt with any real estate agent. They thereupon orally agreed between themselves to a sale for $200,000.[2] It was not until after such agreement that Marisquerena notified Hobson that her customer was Tomera. Even with such knowledge Hobson consummated the deal with Tomera. Hobson did testify that he did not expect Marisquerena to disclose her prospective buyer during the negotiation stages.

From the foregoing the court concluded that Hobson agreed to pay a 5 percent commission of $10,000 based on the sale price of $200,000; that $10,000 was a reasonable fee; that Tomera was ready, willing, and able to pay $210,000, leaving a net to Hobson of $200,000.

The court further determined that both Hobson and Tomera acted in bad faith toward Marisquerena.

Prior to entry of final judgment, the trial judge filed a written decision which stated: "Having determined as a matter of fact that it was Anita Marisquerena's initial approach to Ed Tomera that was the first of a series of events resulting in his purchase of the Hobson ranch; also that defendants had notice prior to entering into the agreement to sell to Ed Tomera of plaintiff's claim; * * *."

There is some evidence that Tomera through one Daly did make overtures to Hobson regarding the purchase of the ranch prior to the time he was contacted by Marisquerena. The evidence however supports a conclusion that such negotiations were terminated prior to Marisquerena's employment.

---

[1] The testimony of Tomera and Hobson that this meeting took place before Tomera made his $210,000 offer was so improbable that the trial court was justified in disregarding the same.

[2] Tomera admitted that after Marisquerena learned of this agreement between Tomera and Hobson she contacted Tomera and he told her that he had bought the Hobson ranch, and that there was no reason for him to pay $210,000 when he could get the ranch for $200,000.

The evidence is sufficient to sustain the court's findings and conclusions that Marisquerena was the procuring cause of the sale; that Hobson was guilty of bad faith in dealing directly with Tomera, particularly after he was notified that Marisquerena had a sale of $210,000 with $200,000 net to him, and also when he completed the sale with Tomera after he knew that Tomera was the prospective purchaser obtained by Marisquerena. Romezzano v. Avansino, 44 Nev. 72, 189 P. 681; Close v. Redelius, 67 Nev. 158, 215 P.2d 659; Humphrey v. Knobel, 78 Nev. 137, 369 P.2d 872. See also Wiechmann v. Hale, 76 Nev. 492, 358 P.2d 113.

Appellants contend that the trial court erroneously failed to recognize as true certain uncontradicted evidence. In Duffill v. Duffill, 57 Nev. 224, 61 P.2d 985, we stated: "In the very nature of things there was no possibility of a contradiction of the testimony of the witnesses mentioned, but it is a well-recognized rule that a court is not bound to accept uncontradicted testimony." We believe this rule is particularly applicable in this case where substantially all of the uncontradicted evidence consisted of testimony given by Tomera and Hobson whom the court determined had acted in bad faith toward Marisquerena.

There is nothing in the evidence which in any way connects appellant Thelma L. Hobson with the dealings between her husband and Marisquerena. She was not even a party to the ultimate written sales agreement between Joseph S. Hobson and Tomera.

Judgment against appellant Joseph S. Hobson affirmed. Judgment against appellant Thelma L. Hobson reversed. Costs to respondent.

THOMPSON and BADT, JJ., concur.