J. A. EWING, Doing Business as EWING MANUFACTURING CO., Appellant, *v.* GEORGE SARGENT, SARGENT SHOWCASE AND FIXTURE CO., INC., Respondents.

No. 6304

February 26, 1971                                      482 P.2d 819

*Gray, Horton and Hill,* of Reno, for Appellant.

*Goldwater, Hill, Mortimer and Rose,* of Reno, for Respondents.

## OPINION

By the Court, GUNDERSON, J.:

Appellant J. A. Ewing, a Las Vegas manufacturer of gaming accessories, seeks reversal of a judgment entered after a non-jury trial, denying him recovery of $13,276.12 allegedly due from respondent Sargent Showcase and Fixture Co., Inc., a Reno-based manufacturer of gaming furniture and fixtures, and from respondent George Sargent, the corporation's president. We affirm the judgment, having determined the lower court did not err as Ewing contends, either in reaching a decision for respondents despite the testimony of Ewing's witness Donahue, or in declining to consider the theory of quantum meruit which Ewing first raised by post-trial brief.

Since the "very early fifties," to complete orders generated in the course of its business, the Sargent company has purchased from Ewing such accessories as trays, locking covers for "twenty-one" tables, "crap racks," and similar items, paying for them at prices discounted 25% from those stated in Ewing's catalogs. In early July, 1967, because a furniture manufacturer with design expertise was necessary to the transaction, Ewing telephoned Sargent to involve him in seeking to outfit a new casino at El Conquistador Hotel, San Juan, Puerto Rico. Each at his own expense, they flew there together, in company with Ewing's friend Donahue, the only witness to

testify at the trial other than Ewing and Sargent. Hotel representatives supplied them with a copy of a proposal from B. C. Wills & Company, a competitor of the Sargent company, which offered a list of furniture, fixtures, and accessories to outfit the casino at a price of some $32,000. After tentative discussions with hotel representatives concerning design of furniture and fixtures to be manufactured by Sargent, he returned to Reno to begin design work, while Ewing sought other outlets for his accessories in neighboring islands.

The hotel company ultimately approved furniture designs prepared by Sargent; then, it sent the Sargent company a purchase order for some $64,000 in merchandise, couched in the same general terms as the proposal of B. C. Wills & Company, encompassing accessories apparently to be obtained by Sargent from Ewing in the course of filling the order. The parties proceeded accordingly: the Sargent company issued purchase orders to Ewing; Ewing supplied accessories for use with the Sargent company's furniture; the hotel company made payments to the Sargent company, which made remittances to Ewing. When disputes arose concerning timeliness and quality of Ewing's deliveries, Ewing supplied some items directly to the hotel, and at Sargent's request the hotel company made final payment for accessories directly to Ewing.

Ewing thereafter commenced this action, to obtain something beyond payment for his own goods; how much more, and on what basis, has never been made clear. Ewing alleged in his Complaint that Sargent "agreed to pay twenty-five percent of the total price" of all goods and services supplied to the hotel; yet, he seemed to say at pre-trial deposition that his agreed compensation was to have been a percentage of the price proposed by B. C. Wills & Company; at trial, he testified to still another formula. While the trial judge's Opinion reflects that he was especially impressed by these apparent inconsistencies, Ewing's testimony also vacillated on other matters, and was at odds with aspects of the parties' course of dealing. Sargent's testimony was clear and unequivocal: he had only agreed to pay Ewing the price of goods obtained from him; if Ewing had ever asked for more, he had not agreed to pay it. The trial court found "that there was no meeting of the minds between the parties, and that the plaintiff has failed to prove his case by a preponderance of the evidence."

Appellant contends "that the lower court committed error in applying the preponderance of evidence rule where Appellant's interpretation of the oral contract between Appellant and Respondent was supported by the testimony of a witness, Mr.

Donahue, who was not a party to the contract." In regard to this claim of error, appellant quotes testimony by Donahue that in Puerto Rico he heard Ewing indicate to Sargent a desire that Sargent use B. C. Wills & Company's price proposal as the basis of computing his own, by adding an amount to compensate Ewing.[1] Ewing apparently thinks the trial court was constrained to rule in his favor, because his position was thus "supported" by a disinterested witness. We disagree, for several reasons.

First, Donahue's testimony does not truly "support" the position taken by Ewing at trial; for at trial Ewing asserted that the Wills price proposal was not the basis for computing Ewing's compensation and arriving at Sargent's bid, although in a pre-trial deposition he had testified that it was.[2]

Second, as was proper, the trial judge weighed Donahue's testimony in light of the fact that Ewing's counsel elicited no testimony from Donahue regarding a response to Ewing's suggestions, stating in his Opinion: "Peculiarly enough, there is no testimony as to any response by Mr. Sargent." In Douglas Spencer v. Las Vegas Sun, 84 Nev. 279, 439 P.2d 473 (1968), where a plaintiff failed to produce certain documentary evidence that might have corroborated his own testimony, we held that this omission raised the presumption of NRS 52.070(5) "that evidence willfully suppressed would be adverse if produced," and could be relied upon to sustain a judgment adverse to the plaintiff even though the plaintiff's testimony was not directly controverted. Thus viewed, if Donahue's testimony aids anyone, it supports respondent Sargent, not appellant Ewing.

Third, and most important, under settled legal principles, Donahue's testimony would not necessitate a judgment in favor

---

[1]"And in this conversation, as I recall, Mr. Ewing told Mr. Sargent to be sure that when he made up his prices, to add on an extra 25 percent for Ewing's time and effort and work. I remember this conversation going on a couple of times. And Mr. Ewing—they had this contract of B. C. Wills in front of them and they were discussing prices and that—and Mr. Ewing brought up to be sure to add his 25 percent on, when they were working on this thing."

[2]At trial, with reference to the alleged agreement, Ewing was asked on cross-examination if the agreement was that the parties would "take B. C. Wills' figure and add 25 percent." Unequivocally, he answered: "No." In his pre-trial deposition, Ewing was asked if the arrangement was "to add 25 percent to the bid submitted by B. C. Wills." He categorically stated: "That's right."

of Ewing, even if it constituted an unequivocal assertion that Sargent had assented to Ewing's ultimate version of the supposed agreement. Precedents of this court establish beyond cavil that it is the prerogative of the trier of fact to evaluate the credibility of any witness's testimony, and to reject it, at least where the testimony of the witness is contradicted as in the instant case, is impeached, is inherently incredible, or conflicts with other evidence or inferences arising from evidence. For example, see: Roberti v. Anderson, 27 Nev. 396, 76 P. 30 (1904), upholding a judgment against a plaintiff even though his contentions were supported by witnesses not parties to the action, and stating that "the testimony of a larger number of witnesses to a different state of facts is no ground for reversal" (27 Nev., at 403); Havas v. Alger, 85 Nev. 627, 461 P.2d 857 (1969), and Williams v. Lamb, 77 Nev. 233, 361 P.2d 946 (1961), upholding judgments in favor of defendants on conflicting evidence, even though defendants had the affirmative burden of proving fraud; In re Duffill's Estate, 57 Nev. 224, 61 P.2d 985 (1936), holding that the trier of fact is not necessarily constrained to accept uncontradicted testimony, but may consider any "inherent improbabilities of the statements of witnesses" (57 Nev., at 231); In re Golding's Estate, 59 Nev. 201, 89 P.2d 1049 (1939), holding that uncontradicted testimony may be disbelieved, when inconsistent with other circumstances established by the evidence; and Douglas Spencer v. Las Vegas Sun, 84 Nev. 279, 439 P.2d 473 (1968), previously discussed in this Opinion, recognizing that while it may not be disregarded arbitrarily, even uncontroverted testimony may be rejected in favor of a legitimate inference or presumption arising from evidence of record. On the general proposition that credibility and weight of testimony is for the trier of facts, see also: Carlson v. McCall, 70 Nev. 437, 271 P.2d 1002 (1954); Berto v. Wilson, 74 Nev. 128, 324 P.2d 843 (1958).

In accord with our holdings, Dean Wigmore, in a section titled "General Principle; One Witness may Suffice; An Uncontradicted Witness need not be Believed," has stated that the common law, rejecting rules based on numerical superiority, recognizes four general principles:

"(1) Credibility does not depend on numbers of witnesses. Therefore:

"(2) In general, the testimony of a single witness, no matter what the issue or who the person, may legally suffice as evidence upon which the jury may found a verdict.

"(3) Conversely, the mere assertion of any witness does not of itself need to be believed, *even though he is unimpeached* in any manner; because to require such belief would be to give a quantitative and impersonal measure to testimony:[3]

. . . . .

"(4) As a corollary of the first proposition, *all rules requiring two witnesses, or a corroboration of one witness,* are exceptions to the general principle." J. Wigmore, Evidence, § 2034, at 259–263 (3rd ed. 1940).

In summary, the law does not require that the testimony of a witness be believed, simply because he is not a party to the action, although his testimony cannot be arbitrarily ignored. Donahue's testimony was arguably inconsistent with the testimony of Ewing and with the actions of the parties, discredited by a presumption arising from failure to inquire of him as to Sargent's reactions to Ewing's suggestions, and to whatever extent it tended to prove an agreement was contradicted by the testimony of Sargent. We find no error in the trial judge's determination that Donahue's testimony did not sufficiently "support" Ewing's contentions.

Asserting that an agreement to pay additional compensation must be implied to prevent respondents' "unjust enrichment," Ewing further contends that the court "should have allowed recovery" under our holdings in Bangle v. Holland Realty Inv. Co., 80 Nev. 331, 393 P.2d 138 (1964), Whiteman v. Brandis, 78 Nev. 320, 372 P.2d 468 (1962), Berrum v. Georgetta, 60 Nev. 1, 93 P.2d 525 (1939), Maitia v. Allied L. & L. S. Co., 49 Nev. 451, 248 P. 893 (1926), and Burgess v. Helm, 24 Nev. 242, 51 P. 1025 (1898). These authorities establish that when an express agreement cannot be found or provisions for payment are uncertain, and when a right to reasonable compensation is placed in issue by the pleadings or is litigated by express or implied consent of the parties, a recovery in

---

[3]In a footnote to this proposition, Dean Wigmore refers to a significant body of authority holding that an uncontradicted or unimpeached witness must be believed as a "loose and futile but not uncommon heresy," maintainable only as a ground for directing a verdict for a proponent in accord with the principle that in certain instances undisputed testimony may require a verdict simply because the proponent has adduced evidence sufficient to throw upon his adversary the liability of adducing some evidence to the contrary. In such a case, if this duty is not sustained the judge must determine as a matter of law that the burden of going forward has not been carried, and may not *arbitrarily* reject credible, uncontradicted testimony. See, J. Wigmore, Evidence, § 2495, at 306 (3rd ed. 1940); cf. Douglas Spencer v. Las Vegas Sun, 84 Nev. 279, 439 P.2d 473 (1968).

quantum meruit may be allowed if necessary to prevent unjust enrichment. They do not establish that the quantum meruit theory could be applied to a case like the instant one, or that if theoretically applicable the evidence warranted invoking it, or that the trial court was constrained to grant recovery on this theory, which was raised for the first time by a post-trial brief.

It has been said that where the reason for a rule stops, there stops the rule. With regard to the applicability of quantum meruit to a case like the instant one, respondent suggests that quantum meruit could not be applied because "in the case at bar, there was an express written agreement between the parties, as is evidenced by the purchase orders between George Sargent and A. J. [sic] Ewing." Numerous authorities tend to support respondent's view that an action does not lie on an implied contract where there exists between the parties an express contract covering the same subject matter. See, for example: Rogers v. American President Lines, Ltd., 291 F.2d 740 (9 Cir. 1961), holding an employee who had been paid his agreed wages could not claim additional compensation in quantum meruit to prevent his employer's supposed "unjust enrichment"; Keith v. Kottas, 172 P.2d 306 (Mont. 1946), holding that services rendered by an employee are presumed compensated for by the stipulated wage, that to overcome this presumption he must prove an express contract for additional compensation, and that no implied contract can be posited in such a situation; Verdi v. Helper State Bank, 196 P. 225 (Utah 1921), holding that where a time certificate of deposit provided for interest for six months only, a promise to pay interest on the deposit for a longer period could not be implied; Ryan v. Nelson, 128 N.W.2d 592 (Neb. 1964), holding that where an express contract governed the obligations of a tenant, an obligation to pay the reasonable rental value of the premises could not be implied; Klebe v. United States, 263 U.S. 188, 44 S.Ct. 58, 68 L.Ed. 244 (1923), holding that where an express contract defined the parties' rights, that contract governed, and no other contract could be implied. It is one thing to imply an agreement to pay for valuable goods or services rendered in anticipation of compensation, when an express agreement defining compensation cannot be found or is uncertain as to the exact terms of payment; it is quite another thing to imply an agreement for payment beyond that apparently bargained for by the parties.

However, our decision in this case need not be grounded on the considerations just discussed. Assuming that quantum meruit is a theoretically possible remedy in a case like the instant one, the record before the lower court would not have justified such recovery in the instant case, because we find no evidence that the goods and services provided by Ewing were of a greater value than the sums he received. There is evidence that the Sargent company derived approximately $6,000 profit performing its part of the project; however, there is no evidence of Ewing's profit, no evidence of the parties' respective capital investments, time expenditures, and like concerns, and no evidence of trade practices in similar situations. To summarize, in the record before the lower court there was no more evidence that appellant Ewing should have a portion of respondent's profit, absent an express agreement, than that respondent should have a portion of appellant's.

We can find no error in the lower court refusing recovery on quantum meruit theory, particularly in the absence of any motion to open the case.

Affirmed.

ZENOFF, C. J., BATJER, MOWBRAY, and THOMPSON, JJ., concur.