IVANHOE, INC., a Nevada Corporation, Appellant, v. STROUT REALTY, a California Corporation, Respondent.

No. 7490

November 27, 1974                    528 P.2d 700

*Carl F. Martillaro* and *Arthur J. Bayer, Jr.,* of Carson City, for Appellant.

*Manoukian, Scarpello & Alling, Ltd.,* of Carson City, for Respondent.

## OPINION

By the Court, ZENOFF, J.:

In 1968 the respondent corporation contacted the appellant corporation and asked whether the appellant's property in Carson City was for sale and if so, whether the appellant

would "list" the property with the respondent as broker. Further negotiations between the parties were held and a listing agreement was entered into whereby the respondent was to act as a broker in the sale of the property.

The type of listing that this agreement was is one of the major issues in this appeal. The appellant contends that the agreement was a special "net" listing with any broker's commission to be the excess, if any, of the purchase price over a certain net minimum amount payable to the seller. The respondent contends, and the trial court so found, that the agreement was a general "open" listing whereby the broker was entitled to a percentage of 5 percent in this case of the actual sales price as a commission.

In 1970 Strout Realty made contact with the ultimate purchaser of the property involved and in 1971 the respondent informed the appellant that someone was interested in the property. The respondent requested that the appellant supply further information so that it could be shown to the potential buyer. Strout also prepared a map of the property for the buyer and transmitted the buyer's first offer to the seller which was rejected. Thereafter, the identity of the buyer was disclosed to the appellant by Strout in September 1971.

Subsequently, the buyer, without informing Strout Realty, contacted the appellant directly and a meeting between buyer and seller was arranged for December 9, 1971. This meeting was held and an agreement was reached for the sale of the property at a price of $550,000.00. It is uncontroverted that while all the parties present at this meeting knew that although Strout had originally made contact with the buyer that Strout had no knowledge of either the direct contact between the buyer and seller or of the meeting on December 9, 1971, where the agreement of sale was entered into.

Later, the buyer and broker executed an "agreement" whereby they agreed that "should" the buyer purchase the property in question for $550,000.00 or less the total commission due Strout Realty would be $5,000.00. However, the record shows that the buyer did not mention that a prior meeting had been held earlier that day at which he and the seller agreed on a purchase price of $550,000.00.

Subsequently, when the respondent learned of the prior sale of the property it demanded from the appellant a broker's commission of 5 percent of the total sales price. The appellant refused to pay any amount and this litigation followed.

At the trial, the appellant asserted that no commission was due the respondent because the listing was a net listing for

$550,000.00 with the broker's commission to be the excess of the sales price over that amount. Since the sales price was $550,000.00 the appellant concluded that no commission was due the broker. In addition, the appellant contended that even if the listing was a general open listing with a percentage of the actual sales price as the broker's commission the agreement executed between the buyer and the respondent was a novation and discharged the appellant from any liability to Strout for a commission.

The trial court found against the appellant on both points and held that the appellant was liable to Strout Realty for a commission of 5 percent of the actual sales price.

1. The appellant contends that the trial court erred when it found the listing agreement to be a general open listing. The type of listing, whether special or general, was contested at the trial. The trial court reached the conclusion that Strout Realty had an open listing agreement, in other words, a "general" listing which would entitle it to a full commission. There is not, however, a scintilla of evidence to support that finding. The evidence presented by both the appellant and respondent points to a net listing. In a letter of August 20, 1968, signed by Bob Hass, Strout's agent, addressed to Harvey Sewell, he wrote in part: "Your price for the leased building and the three acres is $550,000, with the selling commission to be added on top of this price. . . . Also you mentioned you would sell the above mentioned leased building, together with your total land of approximately 15 acres, for a total price of $600,000, with the selling commission to be added on top of the price."

The record shows that the leased building, together with approximately 15 acres, was sold for the total price of $550,000.00. Strout Realty did not become a partner with Ivanhoe by reason of the fact that it was given the opportunity to earn a commission. It was given an opportunity to procure a willing and able buyer at a price in excess of $600,000.00. This they did not do.

The respondent relies heavily on Hobson v. Olin, 81 Nev. 60, 398 P.2d 708 (1965). In that case there was indeed a net listing. But unlike this case, the buyer, through the broker, made an offer of $210,000.00 which was $10,000.00 above the net price. The buyer and seller got together and the seller sold to the buyer for $200,000.00, and thereby fraudulently prevented the broker from receiving her commission. The

courts properly allowed a recovery to the broker. Here no such facts exist.

It appears that Ivanhoe is not obligated to Strout at all, but because Strout had brought Carrington to Ivanhoe, the officers of Ivanhoe felt morally obligated and did not consummate the sale until some arrangement for a fee was made between Carrington and Strout.

Furthermore, there is no evidence to support the trial court's findings that the defendant corporation and Francis Carrington were guilty of bad faith in closing the transaction to the exclusion of the plaintiff. Strout was notified of the sale and of the sale price. If, as the real estate agent of Ivanhoe, Strout wanted to verify this, it could have called Ivanhoe.

Because Strout had never brought a buyer willing, and able to pay any price for the property above the net selling price, Ivanhoe owed no obligation to Strout, and went beyond any legal obligation when it insisted that Carrington make some kind of a fee arrangement with Strout.

2. The appellant next asserts that the trial court erred when it refused to find that the agreement executed between the realty company and the buyer constituted a novation which discharged the appellant from any liability for a broker's commission. It becomes unnecessary to decide that question. Our conclusion that the realty company is not entitled to a commission from the seller is dispositive of any other issue raised on this appeal.

Reversed and dismissed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and BAT-JER, JJ., concur.