## OSCAR REESE, Appellant, *v.* CHESTER C. UTTER, Respondent.

No. 8254

June 23, 1976                      551 P.2d 1099

*Walther, Key & Maupin,* of Reno, for Appellant.

*Paul A. Richards,* of Reno, for Respondent.

## OPINION

*Per Curiam:*

The Grass Valley Ranch, owned in corporate form by Molly Knudtsen, adjoins the Callahan Ranch. At the time of the occurrence of the events which culminated in this appeal, the Callahan Ranch was owned by Oscar Reese, appellant. In 1967 or 1968, Reese casually expressed to Knudtsen his desire to sell the ranch; Knudtsen expressed no corresponding desire to purchase at that time. In 1969, however, circumstances changed and Knudtsen developed a keen interest in acquiring Reese's property. For the purpose of negotiating a purchase of the ranch, she contacted Chester C. Utter, a family friend and licensed real estate broker.

After preliminary discussions between Utter and Reese, Reese prepared and submitted to Utter a listing agreement which (1) employed Utter for a period of 30 days for the purpose of procuring a purchaser "ready, willing and able to buy said property at the price and terms . . . authorized by me" and (2) provided that Utter would receive a full commission if, after the expiration of the 30-day period, the property was sold to a purchaser procured by Utter.

At the time the listing agreement was executed, the relationship between Knudtsen and Reese had become somewhat strained. Apparently Knudtsen had constructed a fence which bisected a meadow long used by Reese. When tendered an offer to purchase by Utter in late March of 1969, Reese flatly rejected it when he learned it was made on behalf of Knudtsen. Thereafter, Utter made no further effort to sell Reese's property to Knudtsen or anyone else.

In December of 1969, Reese approached another real estate broker, Elmer Weishaupt, with whom he had entered into a listing agreement which had expired several months previously. Reese requested that Weishaupt contact Knudtsen as a possible purchaser for his ranch. A contract for sale of the ranch was consummated between Knudtsen and Reese through Weishaupt in March of 1970. The purchase price for the ranch, including livestock and equipment, was $285,000.00.

Learning of the sale, Utter commenced an action against Reese to compel payment of a 5% commission. His efforts were rewarded by a trial court judgment in his favor in the amount of $14,250.00.

On this appeal, we are presented with the following questions: (1) Whether Utter procured a buyer ready, willing and able to purchase the Callahan Ranch within the period prescribed by the listing agreement? And (2) whether Utter was the "procuring cause" of the sale of the ranch to Molly Knudtsen?

1. Although the listing agreement between Reese and Utter specified a sales price of $300,000.00 (which included livestock), it also provided that Utter would be entitled to a commission if the ranch could be sold at any price and on any terms authorized by Reese. The offer submitted by Utter was for $160,000.00 exclusive of livestock. Utter never produced a buyer for the livestock who was prepared to meet Reese's terms. The $160,000.00 offer, therefore, differed materially from the terms of the listing agreement.

Where a broker seeks to recover a commission based upon the theory that he acted in accordance with the provisions of a listing agreement by procuring a buyer ready, willing and able to consummate a purchase, he must establish that prior to the expiration of the listing period, he submitted an offer which complied substantially with the terms called for in the listing agreement which was rejected fraudulently or in bad faith or that, within the same period, the buyer and seller entered into a binding contract for the purchase of the subject property on terms other than those specified in the listing agreement but otherwise acceptable to the seller. Nollner v. Thomas, 91 Nev. 67, 533 P.2d 478 (1975); Diamond v. Haydis, 356 P.2d 643 (Ariz. 1960); Postal Union Life Ins. Co. v. Hensley, 186 P.2d 802 (Okl. 1947). Unless the terms of the offer were in accord with the terms of the listing agreement, Reese had the right to reject it without incurring liability for a brokerage commission. Knudtsen was not a ready, willing and able buyer as would entitle Utter to a commission for the offer he tendered because the offer differed materially from the terms provided in the listing agreement.

2. The question remains whether Utter was the procuring cause of the sale. We are of the opinion that he was not. The listing agreement between himself and Reese had expired. The

last contact Utter had with either Knudtsen or Reese was March 28, 1969, when he submitted the offer that was rejected. The sale of the ranch a year later to Knudtsen was accomplished without Utter's assistance or participation. His listing agreement had expired and he had abandoned all efforts at negotiating a sale of the property. If Utter had continued his efforts to sell the Callahan Ranch or if there was a hint of fraud or bad faith on the part of Knudtsen or Reese, a contrary result might be justified. Otherwise, an obligation to pay a brokerage commission will not be imposed simply by reason of the fact that at one time a broker unsuccessfully submitted an offer on behalf of the eventual purchaser. Baird v. Madson, 134 P.2d 885 (Cal.App. 1943); Offutt v. Phillis, 285 P.2d 382 (Okl. 1955). See also, Bartsas Realty, Inc. v. Leverton, 82 Nev. 6, 409 P.2d 627 (1966); Ivanhoe, Inc. v. Strout Realty, 90 Nev. 380, 528 P.2d 700 (1974).

Other assignments of error need not be considered. The foregoing is dispositive of this appeal.

Reversed and remanded with direction to enter judgment for appellant.